IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WARREN BERES, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | No. 03-785L, 04-1456L, 04-1457L, 04-1458L, 04-1459L, 04-1463L, 04-1465L, 04-1466L, 04-1467L, 04-1468L, 04-1469, 04-1471L, 04-1472L, 04-1473L, 04-1474L<br>Hon. Marian Blank Horn<br><br>(E-filed December 1, 2017) |

## THE UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

STATUTORY BACKGROUND .................................................................................... 4

STANDARD OF REVIEW ........................................................................................... 7

ARGUMENT ................................................................................................................. 8

    I.      Plaintiffs Lack Title to Land Underlying the Right-of-Way .................................. 9

            A.     Deeds or Plats Using a Metes and Bounds Description that Exclude
                   the Right-of-Way Rebut the Centerline Presumption .............................. 12

                   1.     Descriptions in Deeds that Exclude the Right-of-Way ................ 12

                   2.     The Waverly Shores Plat Excludes the Right-of-Way ................ 16

            B.     The "Shorelands" Conveyances did not Convey Property
                   Underlying the Right-of-Wa .................................................................... 18

    II.     Plaintiffs Cannot Adversely Possess the Reversionary Interest in the Right-
         of-Way ............................................................................................................... 21

            A.     Plaintiffs' Adverse Possession Claims are Preempted Under the
                   ICCTA ....................................................................................................... 22

                   1.     The Surface Board of Transportation has already decided the
                         question of whether state law adverse possession claims are
                         preempted under the ICCTA ........................................................ 24

            B.     Plaintiffs Cannot Adversely Possess Portions of the Right of Way
                   Patented to the Railroad through the 1875 Act ........................................ 27

            C.     Under Washington State Law, Plaintiffs Cannot Adversely Possess
                   A Reversionary Interest .......................................................................... 29

CONCLUSION ............................................................................................................. 30

# TABLE OF AUTHORITIES

**Cases**

*Allard Cattle Co. v. Colo. & So. Ry. Co.*,
  516 P.2d 123 (Colo. App. 1973) ................................................................. 28

*Am. Pelagic Fishing Co. v. United States*,
  379 F.3d 1363 (Fed. Cir. 2004) ................................................................... 8

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................................... 7

*Ass'n of Am. R.R. v. S. Coast Air Quality Mgmt. Dist.*,
  622 F.3d 1094 (9th Cir. 2010) .................................................................. 26

*B & S Holdings, LLC v. BNSF Ry. Co.*,
  889 F. Supp. 2d 1252 (E.D. Wash. 2012) ......................................... 23, 27

*Barney v. Keokuk*,
  94 U.S. 324 (1876) .................................................................................... 20

*Beres v. United States*,
  104 Fed. Cl. 408 (2012) ............................................................................ 28

*Beres v. United States*,
  97 Fed. Cl. 757 (2011) .............................................................................. 20

*Birt v. Surface Transp. Bd.*,
  90 F.3d 580 (D.C. Cir. 1996) .................................................................. 4, 6

*Boise Cascade Corp. v. Union Pac. R.R. Co.*,
  454 F. Supp. 531 (D. Utah 1978) ............................................................. 28

*Bonelli Cattle Co. v. Arizona*,
  414 U.S. 313 (1973) .................................................................................. 20

*Brown v. State*,
  924 P.2d 908 (Wash. 1996) ...................................................................... 10

*Buffalo S. R.R. Inc. v. Village of Croton-on-Hudson*,
  434 F. Supp. 2d 241 (S.D.N.Y. 2006) ..................................................... 24

*Caldwell v. United States*,
  391 F.3d 1226 (Fed. Cir. 2004) .............................................................. 5, 6

*Caldwell v. United States*,
  57 Fed. Cl. 193 (2003) ................................................................................ 5

*Cavin v. United States*,
  956 F.2d 1131 (Fed. Cir. 1992) .................................................................. 8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................ 7, 8

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984) ................................................................................... 26

*Chi. & Nw. Transp. Co. v. Kalo Brick & Tile Co.*,
450 U.S. 311 (1981) ..................................................................................... 4

*Citizens Against Rails-To-Trails v. Surface Transp. Bd.*,
267 F.3d 1144 (D.C. Cir. 2001) ................................................................... 6

*Colorado v. United States*,
271 U.S. 153 (1926) ..................................................................................... 4

*Conti v. United States*,
291 F.3d 1334 (Fed. Cir. 2002) ................................................................... 2

*Cook v. Hensler*,
107 P. 178 (Wash. 1910) ............................................................................ 16

*CSX Transp., Inc.—Pet. for Decl. Order*,
FD 34662 2005 WL 1024490 (STB May 3, 2005) ............................... 24, 25

*DHX, Inc. v. Surface Transp. Bd.*,
501 F.3d 1080 (9th Cir. 2007) ................................................................... 26

*Franks Inv. Co. LLC v. Union Pac. R.R. Co.*,
593 F.3d 404 (5th Cir. 2010) ..................................................................... 25

*Frye v. King Cty.*,
275 P. 547 (Wash. 1929) ............................................................................ 17

*Goos v. I.C.C.*,
911 F.2d 1283 (8th Cir. 1990) ..................................................................... 6

*Great N. Ry. Co. v. Steinke*,
261 U.S. 119 (1923) ................................................................................... 28

*Hagen v. Bolcom Mills*,
133 P. 1000 (Wash. 1913) .......................................................................... 18

*Haggart v. United States*,
108 Fed. Cl. 70 (2012) ........................................................................... 8, 11

*Hanson Indus., Inc. v. Cty. of Spokane*,
58 P.3d 910 (Wash. Ct. App. 2002) ........................................................... 10

*Harkleroad v. Linkous*,
704 S.E. 2d 381 (Va. 2011) ....................................................................... 30

*Harris v. Ski Park Farms*,
844 P.2d 1006 (Wash. 1993) ...................................................................... 10

*Hayfield N. R.R. v. Chi. & N.W. Transp. Co.*,
467 U.S. 622 (1984) ................................................................................ 4, 6

*Himonas v. Denver & R.G.W.R. Co.*,
   179 F.2d 171 (10th Cir. 1949) ............................................... 28

*Island Park, LLC v. CSX Transp.*,
   559 F.3d 96 (2d Cir. 2009) ................................................... 25

*Jie Ao and Xin Zhou – Pet. for Declaratory Order*,
   FD 35539 2012 WL 2047726 (STB June 4, 2012)................... 24, 25, 26

*Kaseburg v. Port of Seattle*,
   No. C14-0784 JCC, 2016 WL 4440959 (W.D. Wash. Aug. 23, 2016) ............ 11, 20

*Kiely v. Graves*,
   271 P.3d 226 (Wash. 2012) ................................... 3, 17, 24, 29

*Kindred v. Union Pac. R.R. Co.*,
   225 U.S. 582 (2012)............................................................. 28

*King Cty. v. Squire Inv. Co.*,
   801 P.2d 1022 (Wash. App. 1990)........................................ 12

*Lawson v. State*,
   730 P.2d 1308 (Wash. 1986) ............................................... 10

*London v. City of Seattle*,
   611 P.2d 781 (Wash. App. 1980)......................................... 18

*Marshall v. Chi. & Nw. Transp. Co.*,
   826 F. Supp. 1310 (D. Wyo. 1992) *aff'd*, 31 F.3d 1028 (10th Cir. 1994) ............... 28

*Martin v. Walters*,
   490 P.2d 138 (Wash. App. 1971)......................................... 29

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)............................................................... 7

*Maumee & W. R.R. Corp. & RMW Ventures, LLC—Pet. for Decl. Order*,
   FD 34354, 2004 WL 395835 (STB 2004) ............................ 25

*McConiga v. Riches*,
   700 P.2d 331 (Wash. App. 1985)......................................... 18

*McCrory Sch. Dist. of Woodruff Cty. v. Brogden*,
   333 S.W.2d 246 (Ark. 1960).................................................. 30

*McDowell v. Beckham*,
   130 P. 350 (Wash. 1913) ..................................................... 30

*Moore v. Clark*,
   289 P. 520 (Wash. 1930) ..................................................... 16

*N. Pac. Ry. Co v. Smith*,
   171 U.S. 260 (1898).............................................................. 28

*N. Pac. Ry. Co. v. Ely*,
  197 U.S. 1 (1905) .................................................................................................... 28

*N. Pac. Ry. Co. v. Spokane*,
  88 P. 135 (Wash. 1907) ........................................................................................ 25

*N. Pac. Ry. v. Townsend*,
  190 U.S. 267 (1903) .............................................................................................. 28

*Narrows Realty Co v. State*,
  329 P.2d 836 (Wash. 1958) .................................................................................. 20

*Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd.*,
  158 F.3d 135 (D.C. Cir. 1998) ................................................................................ 4

*Nat'l Wildlife Fed'n v. I.C.C.*,
  850 F.2d 694 (D.C. Cir. 1988) ................................................................................ 6

*Neb. Trails Council v. Surface Transp. Bd.*,
  120 F.3d 901 (8th Cir. 1997) .................................................................................. 5

*Netherlands Am. Mortg. Bank v. E. Ry. & Lumber Co.*,
  252 P. 916 (Wash. 1927) ...................................................................................... 25

*New Orleans & Gulf Coast Ry. Co. v. Barrois*,
  533 F.3d 321 (5th Cir. 2008) ................................................................................ 24

*Nw. Indus., Inc. v. City of Seattle*,
  658 P.2d 24 (Wash. 1983) .................................................................................... 29

*Oregon ex rel. State Land Bd., v. Corvallis Sand & Gravel Co.*,
  429 U.S. 363 (1977) .............................................................................................. 20

*PCS Phosphate Co. v. Norfolk S. Corp.*,
  559 F.3d 212 (4th Cir. 2009) ................................................................................ 25

*Piel v. Dewitt*,
  351 N.E.2d 48 (Ind. 1976) .................................................................................... 30

*Preseault v. I.C.C.*,
  494 U.S. 1 (1990) ............................................................................................ 2, 4, 6

*Rainier Ave. Corp. v. City of Seattle*,
  494 P.2d 996 (Wash. 1972) .................................................................................. 17

*RLTD Ry. Corp. v. Surface Transp. Bd.*,
  166 F.3d 808 (6th Cir. 1999) .................................................................................. 4

*Roeder Co. v. Burlington N., Inc.*,
  716 P.2d 855 (Wash. 1986) ................................................................ 10, 11, 12, 16

*Rowe v. James*,
  128 P. 539 (Wash. 1912) ...................................................................................... 18

*Sammamish Homeowners v. Cty. of King*,
    No. C15-284 MJP, 2015 WL 3561533 (W.D. Wash. June 5, 2015) ...................................... 14

*Saterlie v. Lineberry*,
    962 P.2d 863 (Wash Ct. App. 1998) ......................................................................................... 16

*State v. Ballard*,
    287 P. 27 (Wash. 1930) ............................................................................................................ 25

*State v. Beeson*,
    232 S.W.3d 265 (Tex. Ct. App. 2007) ...................................................................................... 30

*Stein v. White*,
    143 N.E. 124 (Ohio 1924) ........................................................................................................ 30

*Stuart v. Union Pac. R.R. Co.*,
    227 U.S. 342 (1913) .................................................................................................................. 28

*Sweats Fashions, Inc. v. Pannill Knitting Co.*,
    833 F.2d 1560 (Fed. Cir. 1987) ................................................................................................. 8

*Tubbs v. Surface Transp. Bd.*,
    812 F.3d (8th Cir. 2015) ........................................................................................................... 25

*Union Pac. R.R. v. Chi. Transit Auth.*,
    647 F.3d 675 (7th Cir. 2011) .............................................................................................. 23, 25

*United States v. Dow*,
    357 U.S. 17 (1958) ..................................................................................................................... 8

*United States v. Sherwood*,
    312 U.S. 584 (1941) .................................................................................................................. 22

*Veach v. Culp*,
    599 P.2d 526 (Wash. 1979) ...................................................................................................... 10

*Wash. Sec. & Inv. Corp. v. Horse Heaven Heights, Inc.*,
    130 P.3d 880 (Wash. 2006) ...................................................................................................... 30

*Wis. Cent. Ltd. v. City of Marshfield*,
    160 F. Supp. 2d 1009 (W.D. Wis. 2000) .................................................................................. 24

*Wyatt v. United States*,
    271 F.3d 1090 (Fed. Cir. 2001) .................................................................................................. 8

**Constitutions**

Wash. Const. art. XVII § 1 ............................................................................................................ 20

**Statutes**

16 U.S.C. § 1247(d) (2006) .............................................................................................. 5, 26, 27

28 U.S.C. § 1491 .......................................................................................................................... 22

43 U.S.C. § 934 ................................................................................................................ 3

49 U.S.C. § 10501(b) ............................................................................................. 2, 23, 24

49 U.S.C. § 10502 ............................................................................................................ 5

49 U.S.C. § 10505 ............................................................................................................ 5

49 U.S.C. § 10903 ............................................................................................................ 5

49 U.S.C. § 10904 .......................................................................................................... 26

49 U.S.C. § 10907 .......................................................................................................... 26

49 U.S.C. §§ 10701-10747 ............................................................................................ 24

49 U.S.C. §§ 10901–10907 ........................................................................................... 24

49 U.S.C. §§ 11101-11124 ............................................................................................ 24

49 U.S.C. §§ 11321–11328 ........................................................................................... 24

Federal Land Policy and Management Act of 1976,
  90 Stat. 2743 (1976) ................................................................................................... 3

Transportation Act of 1920,
  41 Stat. 456 (1920) ..................................................................................................... 4

WASH. REV. CODE § 7.28.010 (2017) ........................................................................... 30

WASH. REV. CODE § 79.01.032 (1959) .......................................................................... 19

WASH. REV. CODE § 79.105.060 (2017) ........................................................................ 19

**Rules**

RCFC 56 ........................................................................................................................... 1

RCFC 56(a) ...................................................................................................................... 7

RCFC 56(c)(1) ................................................................................................................. 7

RCFC 56(c)(1)(A) ............................................................................................................ 7

**Regulations**

49 C.F.R. § 1152.29 ......................................................................................................... 5

49 C.F.R. § 1152.29(a)(1)–(3) ......................................................................................... 6

49 C.F.R. § 1152.29(c)–(d) .............................................................................................. 5

49 C.F.R. § 1152.29(d)(1) ............................................................................................. 1, 6

49 C.F.R. § 1152.29(d)(2) ................................................................................................ 6

49 C.F.R. §§ 1152.50–1152.60 ........................................................................................ 5

**Other Authorities**

*Boundary Under Conveyance of Land Bordering on Railroad Right of Way*,
    85 A.L.R. 404 (1933) ................................................................................................................ 12

## TABLE OF EXHIBITS

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| 1 | Schroeder Deed |
| 2 | Spencer Deed |
| 3 | Rossi Deed |
| 4 | Barrett to Collins Deed 10/18/1993 |
| 5 | Simonton to Barrett Deed 2/23/1987 |
| 6 | Map Showing Location of Matrinez Parcel |
| 7 | Map Showing Locations of Spencer, Brockway, and Rossi Parcels |
| 8 | Map Showing Locations of Conway, DeMers, Radford, and Spears Parcels |
| 9 | Matrinez Deed |
| 10 | Brockway Deed |
| 11 | Spears Deed |
| 12 | Conway Deed |
| 13 | DeMers Deed |
| 14 | Radford Deed |
| 15 | Waverly Shores Plat |
| 16 | Levick to Collins Deed 9/28/1989 |
| 17 | Earley to Barrett Deed 11/29/1961 |
| 18 | Freedman Deed |
| 19 | Nelson Deed |
| 20 | Earley to Hughes Deed 4/9/1962 |
| 21 | Gertie Gorman Hughes to William and Betty Hughes Deed 6/9/1966 |
| 22 | Wash. Rev. Code § 79.01.032 (June 25, 1959) |
| 23 | Map of Parcels in Section 20, Township 25 North Range 6 East |
| 24 | State of Washington to Turner Deed 12/3/1928 |
| 25 | State of Washington to Palmberg *et al.* Deed 2/27/1940 |
| 26 | State of Washington to Hughes Deed 9/19/1951 |

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"),

Defendant, the United States, moves for summary judgment with respect to all remaining claims

in the following actions: *Schroeder v. United States*, No. 04-1456L (Fed. Cl.); *Peterson v. United*

*States*, No. 04-1459L (Fed. Cl.); *Spencer v. United States*, No.04-1463L (Fed. Cl.); *Nelson v.*

*United States*, No. 04-1465L (Fed. Cl.); *Estate of Welch v. United States*, No. 04-1471L (Fed.

Cl.); *Collins v. United States*, No. 04-1472L (Fed. Cl.); *and Waverly Hills Club v. United States*,

No. 04-1474L (Fed. Cl.).[1]

## INTRODUCTION

Seventeen complaints were filed in this Court between 2003 and 2005 concerning a

12.45-mile rail line on the eastern shore of Lake Sammamish in King County, Washington.  In

2006, the Court consolidated the actions under Case Number 03-785L.  Plaintiffs in each action

alleged that issuance of a Notice of Interim Trail Use ("NITU")[2] on September 16, 1998 effected

a taking of real property without just compensation.  Two of the cases have since been dismissed

with prejudice, and the merits of five other cases have been resolved through settlement,[3] leaving

---

[1]  The specific plaintiffs subject to this motion are: Clifford and Kathryn Schroeder (*Schroeder*, No. 04-1456L); Donna Marie Raab Matrinez (*Peterson*, No. 04-1459L); Raymond and Lael Spencer, Reid and Susan Brockway, and John Rossi (*Spencer*, No.04-1463L); Robert and Beth Nelson and Estate of William F. Hughes (*Nelson*, No. 04-1465L); Paul and Joanne Spears (*Estate of Welch*, No. 04-1471L); D. Michael and Vanessa Collins, Howard and Pam Freedman, and Donald Barrett (*Collins*, No. 04-1472L); Brian and Mary Conway, Scott and Sandra DeMers, Foster and Lemoine Radford (*Waverly Hills Club*, No. 04-1474L).  Dispositive title issues are not present in the remaining three actions: *Beres v. United States*, No. 03-785L (Fed. Cl.); *Brown v. United States*, No. 04-1473L (Fed. Cl.); and *Morel v. United States*, No. 04-1467 (Fed. Cl.).

[2] The document's title, *i.e.*, Notice of Interim Trail Use, is in fact a misnomer.  A NITU does not actually authorize trail use by the potential trail sponsor, the railroad, or any other entity.  *See* 49 C.F.R. § 1152.29(d)(1).

[3] Two of the seventeen complaints, *Edlund*, No. 04-1464 L, and *Rundle*, No. 04-1476 L, were voluntarily dismissed.  *See Edlund v. United States*, No. 04-1464 L, Order (Fed. Cl. May 15, 2007) (Dkt. No. 10) (dismissing plaintiff's claims with prejudice); *see also Rundle v. United States*, No. 04-1476 L, Order (Fed. Cl. May 15, 2007) (Dkt. No. 11) (same).  The parties have

1

10 consolidated cases pending before the Court.  This motion seeks to fully and finally resolve seven of those matters.

A threshold inquiry in any takings action is whether the plaintiff possessed a cognizable property interest on the date of the alleged taking.  Only where such a property interest is proved can compensation be sought for a taking by the United States pursuant to the Fifth Amendment.  *See Conti v. United States*, 291 F.3d 1334, 1339 (Fed. Cir. 2002).  Consequently, to prevail in these actions, Plaintiffs must demonstrate that they possessed a property interest in a railroad right-of-way on September 16, 1998 that was taken by the federal government through the issuance of the NITU.  *Preseault v. ICC* ("*Preseault I*"), 494 U.S. 1 (1990).

Plaintiffs did not possess a cognizable property interest in the railroad right-of-way in 1998.  This is each of their deeds uses a description, or incorporates a plat, that operates to exclude the railroad right-of-way.  Thus, as a matter of law, Plaintiffs' taking claims fail.

Apparently recognizing this deficiency, in 2016, about 12 years after these actions were originally filed, Plaintiffs alleged that they had obtained title to unspecified portions of the railroad right-of-way via adverse possession.  Plaintiffs' bare and late assertions that they own land underlying the right-of-way through adverse possession are preempted by federal law and untenable under Washington state law.

Under federal law, Plaintiffs could not adversely possess against the railroad itself, which held the present possessory interest in the rail corridor during and before September 16, 1998.  Such a claim is preempted by the Interstate Commerce Commission Termination Act, 49 U.S.C. § 10501(b) (the "ICCTA"), which prevents Plaintiffs' acquisition of portions of the federally-

---

reached settlement on the merits for all of the remaining claims in *Chamberlin*, no. 04-41457, *Manning*, no. 04-1466, *Klein*, no. 04-1458, *Lane*, no. 04-1468, and *Ritzen*, No. 04-1469, although attorneys' fees and expenses have not yet been resolved for these five cases.

regulated railroad right-of-way. Federal law also prevents Plaintiffs from adversely possessing portions of the right-of-way originally granted by Congress through the General Railroad Right of Way Act of 1875, 18 Stat. 482, 43 U.S.C. § 934 *et seq.* (the "1875 Act") (repealed pursuant to the Federal Land Policy and Management Act of 1976, Pub. L. No. 94–579, § 706(a), 90 Stat. 2743, 2793).

Additionally, under Washington law, Plaintiffs could not obtain a reversionary interest through adverse possession. In Washington state, title to real property can be obtained through adverse possession where an adverse use is "actual and uninterrupted, open and notorious, hostile, and exclusive" for a 10-year period.[4] However, "[a]n adverse possession claim cannot be asserted against a reversionary interest or a remainder interest until the future interest becomes a vested interest." *Kiely v. Graves*, 271 P.3d 226, 230–31 (Wash. 2012). Here, Plaintiffs seek to use adverse possession against unnamed third parties who held only a "future interest" during the pertinent period, *i.e.*, before 1998. Consequently, under *Kiely*, any claim of adverse possession against the reversionary interest of third parties in the rail corridor is legally untenable.

Accordingly, the Court should grant the United States' motion for partial summary judgment and dismiss Plaintiffs' claims with prejudice.

---

[4] Because the operative date for Plaintiffs' taking claim is September 16, 1998, the 10-year period of adverse possession of the rail corridor would have had to have commenced no later than September 1988.

## STATUTORY BACKGROUND

Stemming from the Interstate Commerce Act of 1887, as amended and revised, and the Transportation Act of 1920, ch. 91, 41 Stat. 456, 477–78, and subsequent statutes, the Surface Transportation Board ("STB") has exclusive and plenary authority over the construction, operation, and abandonment of virtually all of the nation's rail lines. *Chi. & Nw. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 311–12 (1981); *see also RLTD Ry. Corp. v. STB*, 166 F.3d 808, 810–11 (6th Cir. 1999) (general discussion of the history of railroad regulation). Consequently, a railroad cannot be relieved of its legal obligation to offer service on a particular rail line without first obtaining the express consent of the STB. *See Colorado v. United States*, 271 U.S. 153, 167 (1926); *Nat'l Ass'n of Reversionary Prop. Owners v. STB* ("*NARPO*"), 158 F.3d 135, 137 (D.C. Cir. 1998).

The termination of active rail service by a railroad generally occurs in one of three ways. First, a railroad can apply for permission to discontinue service. This authority allows the railroad to decide "to cease operating a line for an indefinite period while preserving the rail corridor for possible reactivation of service in the future." *Preseault I*, 494 U.S. at 6 n.3; *see also NARPO*, 158 F.3d at 137 n.1 ("A line that is no longer in use, but has not been officially abandoned, may be reactivated later and is termed 'discontinued.'").

Second, a railroad may seek permission to terminate its service over a corridor through an abandonment proceeding. If authority to abandon is granted by the STB, and the railroad "consummates" the abandonment, the rail line is removed from the national transportation system, and the STB's jurisdiction generally comes to an end. *Hayfield N. R.R. v. Chi. & N.W. Transp. Co.*, 467 U.S. 622, 633 (1984); *Preseault I*, 494 U.S. at 6 n.3; *Birt v. STB*, 90 F.3d 580, 585 (D.C. Cir. 1996).

4

Third, under the National Trails System Act Amendments of 1983, Pub. L. No. 98-11, §208, 97 Stat. 42, codified at 16 U.S.C. § 1247(d) (2006) (the "Trails Act"), railroads may seek to discontinue service over a corridor and preserve it for future rail service through railbanking. *See Neb. Trails Council v. STB*, 120 F.3d 901, 903 n.1 (8th Cir. 1997) ("'Rail banking' refers to the preservation of railroad corridor for future rail use."); *Caldwell v. United States*, 57 Fed. Cl. 193, 194 (2003) (under the railbanking process, "[t]he right-of-way is 'banked' until such future time as railroad service is restored" (citation omitted)), *aff'd*, 391 F.3d 1226 (Fed. Cir. 2004). The difference between railbanking and a standard discontinuance is that (1) a third-party accepts full responsibility for the corridor while active rail service is suspended, and (2) this third-party may allow interim trail use of the corridor until active rail service is restored, provided that the third-party agrees to assume all legal liability related to that use. *See* 16 U.S.C. § 1247(d).

In order for a railroad corridor to be railbanked, the railroad must initiate the regulatory process for abandonment of its rail line by filing an abandonment application under 49 U.S.C. § 10903, a Notice of Exemption, or a Petition for Exemption from that process under 49 U.S.C. § 10502 (previously 49 U.S.C. § 10505) and 49 C.F.R. §§ 1152.50–1152.60. *Caldwell*, 391 F.3d at 1228; *see also* 49 C.F.R. § 1152.29.

Once a railroad requests authorization to abandon a rail line through the filing of a Notice of Exemption, a party interested in acquiring or using the corridor for railbanking and interim trail use may then request the issuance of a Notice of Interim Trail Use. 49 C.F.R. § 1152.29(c)–(d). The STB's regulations require a qualified party interested in "acquiring or using" a rail corridor for railbanking and interim trail use to file a request or petition that includes, among other things, a statement of willingness to assume responsibility for the corridor, and an

acknowledgment that interim trail use of the corridor is subject to the "possible future reconstruction and reactivation of the right-of-way for rail service" (*i.e.*, railbanking). 49 C.F.R. § 1152.29(a)(1)–(3). Entering into negotiations about interim trail use is voluntary, *see Nat'l Wildlife Fed'n v. ICC*, 850 F.2d 694, 702 (D.C. Cir. 1988), but if the railroad indicates that it is willing to negotiate a railbanking agreement, the STB must issue a NITU. *Citizens Against Rails-To-Trails v. STB*, 267 F.3d 1144, 1150-53 (D.C. Cir. 2001).

Issuance of a NITU provides a 180-day period for the parties to negotiate a railbanking and interim trail use agreement. 49 C.F.R. § 1152.29(d)(1). In addition, a NITU will "permit the railroad to discontinue service, cancel any applicable tariffs, and salvage track and materials, consistent with interim trail use and rail banking[.]" *Id.* If no agreement is reached within the 180-day period, and the negotiating period is not extended at the request of the parties, then the NITU expires and the railroad is permitted to fully abandon the rail line at issue, "subject to appropriate conditions, including labor protection and environmental matters." *Id.* If the railroad chooses to exercise this authority and consummates abandonment of the rail line, then the line is removed from the national transportation system and the STB's jurisdiction generally comes to an end. *Hayfield N. R.R. Co.*, 467 U.S. at 633; *Preseault I*, 494 U.S. at 6 n.3. If, instead, a railbanking and interim trail use agreement is reached, the NITU automatically authorizes the interim trail use, and the trail sponsor may then assume management of the corridor, subject only to the right of a railroad to restore active rail service. 49 C.F.R. § 1152.29(d)(2); *see also Goos v. I.C.C.*, 911 F.2d 1283, 1295 (8th Cir. 1990); *Birt*, 90 F.3d at 583. The STB's jurisdiction over the rail line is preserved when this occurs. *Caldwell*, 391 F.3d at 1229–30.

6

## STANDARD OF REVIEW

Rule 56(a) of the United States Court of Federal Claims ("RCFC") allows a party to move for summary judgment by "identifying each claim or defense . . . on which summary judgment is sought."  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*  A genuine dispute is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor, and a material fact is one that could affect the outcome of the suit.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A movant may support its assertion that a fact cannot be genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, . . . affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials."  RCFC 56(c)(1)(A).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  Once the moving party meets its initial burden, the non-moving party must support its assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  RCFC 56(c)(1).  In evaluating motions for summary judgment, the court must view any inferences drawn from the underlying facts in the light most favorable to the non-moving party and may not engage in credibility determinations or weight the evidence.  *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

As the United States Court of Appeals for the Federal Circuit emphasized in *Sweats Fashions*: "the burden is *not* on the movant to *produce evidence* showing the *absence* of a

genuine issue of material fact[.]" *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987). Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the [Court of Federal Claims]—that *there is an absence of evidence to support the non-moving party's case*." *Id.* (quoting *Celotex*, 477 U.S. at 325). The burden then shifts to the non-moving party to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the non-moving party's case. *Celotex*, 477 U.S at 331.

## ARGUMENT

As the parties seeking compensation under the Fifth Amendment to the United States Constitution for an alleged taking of their property, Plaintiffs bear the burden of establishing that they own an interest in the railroad right-of-way at issue in this case. "It is axiomatic that only persons with a valid property interest at the time of [an alleged] taking [can be] entitled to compensation." *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001) (citations omitted); *see also Haggart v. United States*, 108 Fed. Cl. 70, 77 (2012).

Thus, as a threshold matter, this Court "must determine whether the claimant has established a property interest for purposes of the Fifth Amendment." *Am. Pelagic Fishing Co. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004) (citation omitted). "If the claimant fails to demonstrate the existence of a legally cognizable property interest, the court[']s task is at an end." *Id.* (citation omitted); *see also United States v. Dow*, 357 U.S. 17, 20–21 (1958) (holding that a plaintiff seeking just compensation for a taking must be the owner of the property at the time of the alleged taking); *Cavin v. United States*, 956 F.2d 1131, 1134 (Fed. Cir. 1992) ("Without undisputed ownership of the . . . property [at issue] at the time of the takings,

[plaintiffs] cannot maintain a suit alleging that the Government took their property without just compensation." (citations omitted)).

Plaintiffs assert that the Trails Act effected a taking of their reversionary interests in land underlying the right-of-way. However, none of Plaintiffs' deeds or plats explicitly convey a property interest in the right-of-way. Despite this fatal deficiency, Plaintiffs ask the Court to disregard the deeds' plain language and imply a conveyance, relying on the so-called centerline presumption. However, the Washington State Supreme Court has held that the centerline presumption is inapplicable where a metes and bounds description in a deed or plat excludes the adjacent right-of-way. Because each Plaintiff subject to this motion has such an instrument in their chain of title, the centerline presumption does not apply.

In an effort to dodge the effects of this already-settled question, Plaintiffs alternatively assert that they obtained ownership of portions of the right-of-way through adverse possession. The ICCTA preempts adverse possession against a railroad right-of-way that is subject to the Surface Transportation Board's ("STB") jurisdiction. Additionally, under Washington state law, an adverse possession claim cannot be invoked to obtain a remainder or reversionary interest. Adverse possession can only be invoked against the present possessory owner, in this instance the railroad. Therefore, under both federal and Washington state law, the Plaintiffs that are the subject of this motion could not and have not obtained title to the railroad right-of-way by adverse possession, and must be dismissed from this case.

## I. Plaintiffs Lack Title to Land Underlying the Right-of-Way

In their complaints, Plaintiffs allege that they "have a property interest in the reversionary interest to the right-of-way . . ." *Schroeder*, No. 04-1456L, Compl. ¶7; *Peterson*, No. 04-1459L, Compl. ¶ 6; *Spencer*, No. 04-1463L, Compl. ¶ 22; *Nelson*, No. 04-1465L; or they "claim an

interest in real property which has been taken by the United States." *Estate of Welch*, No. 04-1471L, Compl. ¶ 2; *Collins*, No. 04-1472L, Compl. ¶¶ 1, 3, 4; *Waverley Hills Club*, No. 04-1474L, ¶¶ 3–9. However, the documents produced in this case show that Plaintiffs have no property interest in the right-of-way because their deeds and related plats plainly exclude the right-of-way.

Interpretation of a deed is a mixed question of fact and law. *Lawson v. State*, 730 P.2d 1308, 1311 (Wash. 1986) (construction of right-of-way deed is mixed question of fact and law). Where, as here, there is no dispute as to the language included in a deed or plat, interpretation of either document is a pure question of law that can be resolved on summary judgment. *Hanson Indus., Inc. v. Cty. of Spokane*, 58 P.3d 910, 913 (Wash. Ct. App. 2002). "[W]hen construing a deed, the intent of the parties is of paramount importance[.]" *Brown v. State*, 924 P.2d 908, 911 (Wash. 1996). "The intent of the parties is to be derived from the entire instrument . . . ." *Harris v. Ski Park Farms*, 844 P.2d 1006, 1012 (Wash. 1993); *see also Brown*, 924 P.2d at 913. To determine intent, courts examine the four corners of the deeds, in light of the substantial body of case law interpreting similar documents. *Lawson*, 730 P.2d at 1311 (citing *Roeder Co. v. Burlington N., Inc.*, 716 P.2d 855, 859 (Wash. 1986)); *Veach v. Culp*, 599 P.2d 526, 527 (Wash. 1979) (en banc).

In general, the conveyance of land adjacent to a railroad right of way "will give the grantee title to the center line of the right of way if the grantor owns so far, unless the grantor has expressly reserved the fee to the right of way, or the grantor's intention to not convey the fee is clear." *Roeder*, 716 P.2d at 862. However, under Washington law, to be entitled to the centerline presumption, Plaintiffs must first establish that their property adjoins the right of way and that they acquired it "from the fee owner of the right of way property[.]" *Id.* If they are able

10

to do so, the presumption applies unless it is rebutted through presentation of "persuasive evidence of the grantor's intent to retain the right of way[.]"  *Id.  See also Kaseburg v. Port of Seattle,* No. C14-0784 JCC, 2016 WL 4440959 at *6 (W.D. Wash. Aug. 23, 2016), *appeal docketed,* No. 16-35768 (9th Cir. Sept. 23, 2016); *Haggart,* 108 Fed. Cl. at 83 (quoting *Roeder,* 716 P.2d at 862–63).

As the Washington Supreme Court has explained, the centerline presumption is rebutted when "a deed refers to the right of way as a boundary but also gives a metes and bounds description of the abutting property[.]"  *Roeder,* 716 P.2d at 862.  The presumption may also be rebutted via evidence of the grantor's intent to retain the right of way.  *Id.* at 862–63.  Additionally, regardless of whether a party's deeds contain a metes and bounds description, the centerline presumption will not apply unless the party also demonstrates that it received its property from a grantor that owned the right-of-way.  The *Roeder* court was explicit on this point:

> The presumption that the grantor intended to convey title to the center of the right of way is *inapplicable* where the adjoining landowner presents no evidence of having received his or her property from the owner of the right of way.  A property owner receives no interest in a railroad right of way simply through ownership of abutting land.

*Id.* at 862  (emphasis added).

The centerline presumption is rebutted as a matter of law for all Plaintiffs because their title instruments—deeds and/or plats—include metes and bounds descriptions or other language that expressly exclude the right-of-way.  Accordingly, for the presumption to apply, Plaintiffs here—all of whom claim ownership of abutting property—must come forward with evidence showing that they "received that property from the fee owner of the right of way property[.]"  *Id.* This Plaintiffs cannot do.  None of the Plaintiffs received the property from a fee owner of the right-of-way, and none have produced unbroken chains of title stretching back to the original

grantors of the right-of-way, showing a clear intent to convey the right of way. Because Plaintiffs own no interest in the railroad right-of-way, the United States is entitled to summary judgment as a matter of law.[5]

### A. Conveyances for Ten of the Parcels at Issue Use Metes and Bounds Descriptions that Exclude the Right-of-Way, Thereby Rebutting the Centerline Presumption

#### 1. Descriptions in Deeds for Eight Parcels Exclude the Right-of-Way

The centerline presumption for the deeds of Schroeder, Spencer, Rossi, one Collins property, the community beach property co-owned by Barrett and Collins, Matrinez, Brockway, and Conway, is rebutted because each of these Plaintiffs' deeds describe the property conveyed to them using an express metes and bounds description that does not include the right-of-way. In *Roeder*, the Washington Supreme Court held that the original grantor retained the fee title to the right of way and did not grant its fee interest when conveying the abutting property by deeds describing the land conveyed, in pertinent part, as running "thence . . . to the South line of the Railroad Right-of-Way of the Chicago, Milwaukee, St. Paul and Pacific Railway; thence Easterly along said Right-of-Way South line One Hundred Sixty and Thirty-Six Hundredths (160.36) Feet . . . ." *Id.* Furthermore, in *Roeder*, even where the deed at issue did not include a strict metes and bounds description but described the property conveyed as "lying Northerly of the right-of-way," the Washington Supreme Court found that the deed did not convey title to the centerline. *Roeder*, 716 P.2d at 862 n.27 (citing Annotation, *Boundary Under Conveyance of*

---

[5] It is immaterial, and this Court need not resolve, who presently owns title to the Corridor. The question is not who or what entity owns the underlying fee interest in each segment of the railroad right of way but, rather, whether the fee title is owned by the Plaintiff seeking just compensation from the United States. *See King Cty. v. Squire Inv. Co.*,
801 P.2d 1022 (Wash. App. 1990) ("[O]wnership should be determined according to the title [one] holds rather than according to whether other parties fortuitously learned of the litigation and appeared to press their claim.").

*Land Bordering on Railroad Right of Way*, 85 A.L.R. 404, 409 (1933)) (internal quotation marks omitted).  Similarly here, these Plaintiffs' deeds use metes and bounds descriptions that describe the property conveyed with reference to the right-of-way, and use precise language to exclude the right-of-way.

The Schroeder, Spencer, Rossi, Collins (for taxlot parcel 202506-9113), and Barrett/Collins community beach parcel deeds convey property using a metes and bounds description that use one side of the right-of-way- the "northwesterly," "southwesterly," or "westerly" margin – as a boundary.  These deeds are excerpted below:

Schroeder deed, taxlot parcel 322506-9144: "running southwesterly 66 feet *along the northwesterly margin of the Northern Pacific Railroad right of way* to the point of beginning; thence north 70°28'04" west . . . thence south 70°28'04" east along said parallel line to the northwesterly margin of the Northern Pacific Railroad right of way; *thence northerly along said right of way to the point of beginning*."  Ex. 1 (emphasis added).

Spencer, taxlot parcel 173870-0035: "Beginning at the intersection of a line of said Government Lot 2 with the southwesterly line of the Northern Pacific Railway right-of-way; *thence north 38 degrees 00 minutes 00 seconds east along said right-of-way line . . . to the true point of beginning*; *thence continuing north 38 degrees 00 minutes 00 seconds east along said right-of-way line 75.00 feet*; thence north . . . west . . . ; thence south 52 degrees 00 minutes 00 seconds east 230 feet more or less to the point of beginning." Ex. 2 (emphasis added).

Rossi, taxlot parcel 173870-0130: "Beginning at the intersection of the southerly line of said Government Lot with *the westerly line of the right-of-way of the Northern Pacific Railway company and running thence northerly along said westerly line* 1238.29 feet to the true point of

13

beginning; *thence northerly along said westerly line 62 feet*; . . . thence South 52°00'00" East 210 feet, more or less, to the true point of beginning."  Ex. 3.

  <u>Collins, taxlot parcel 202506-9113</u>: "Commencing at the intersection of the boundary line . . . with the westerly line of the tract in which Burlington Northern Railway Co., Inc., as successor to the Seattle Lakeshore and Eastern Railroad has acquired an interest . . .; *thence northerly along said westerly line of said railroad tract a distance of 40.00 feet to the true point of beginning; thence continuing northerly along said westerly line a distance of 45.00 feet*; thence southwesterly at right angles to westerly margin of railroad . . . ; thence easterly along said line to true point of beginning."  Ex. 4.

  <u>Collins and Barrett, taxlot parcel 202506-TRCT</u>: "The *uplands* and shorelands adjacent to, or abutting upon, that portion of Government Lot 2 . . . described as follows: . . . a point on the line of navigability of Lake Samammish, and which point is the true point of beginning . . .; thence north 55°02'12" E[ast] to said Point "D"; *thence in a northwesterly direction along the curve of the southwesterly margin of the right-of-way of said railway to the left* . . . ."  Ex. 4 (Collins); Ex. 5 (Barrett).

  Because these "metes and bounds description[s] . . . use the right of way as a boundary line," the deeds through which Schroeder, Spencer, Collins and Collins/Barrett obtained their interests in the above-listed properties defeat application of the centerline presumption under Washington law.  *Sammamish Homeowners v. Cty. of King*, No. C15-284 MJP, 2015 WL 3561533, at *3 (W.D. Wash. June 5, 2015).

  The Matrinez, Brockway, Spears, and Conway deeds all use a location along one of the edges of the right-of-way as the point of beginning for the description of the property conveyed, and then describe the property conveyed using a metes and bounds description that does not

include the right-of-way.  These deeds are excerpted below, and can be compared with the maps at Exs. 6–8.

      <u>Matrinez, taxlot parcel 322506-9241</u>: "Beginning at the intersection of the *westerly line of the Northern Pacific Railway Company's right-of-way* with the east-west center line of said section; thence south 38°05'37" west 282.99 feet; . . . thence easterly along said lot line to the point of beginning."  Ex. 9.[6]

      <u>Brockway, taxlot parcel 173870-0080</u>: "Beginning at the intersection of the south line of Government Lot 2 . . . with the *westerly line of the Northern Pacific Railway Right of Way*; *thence along said right-of way line* . . . to the true place of beginning; thence north 38°00' East 75 feet; . . . thence south 52°00' East 220 feet, more or less, to the place of beginning."  Ex. 10.

      <u>Spears, taxlot parcel 082406-9077</u>: "Beginning at the southwest corner . . . thence north 68°01'44" west 348.87 feet to the southwesterly margin of the Northern Pacific right of way; thence south 18°34'340" east 136.05 feet along said railroad margin to the true point of beginning; thence south 18°34'40" east 78.95 feet . . .  thence north 80°08'20" east to the true point of beginning . . . ."  Ex. 11.

      <u>Conway, taxlot parcel 082406-9138</u>: "Beginning at the southwest corner . . . thence North 68°01'44" West, a distance of 351.75 feet to the Westerly limits of the Northern Pacific Railroad right of way; thence North 18°43'47" West along said Westerly limits, a distance of 809.16 feet to the true point of beginning; thence along a curve to the left having a radius of 1,222.22 feet an arc distance of 180 feet; . . . thence North 71°16'13" East to true point of beginning . . . ."  Ex. 12.

---

[6] The conveyances are in the name of Donna Marie Raab, *see* Ex. 9, whose current name is Donna Marie Raab Matrinez.  *See* ECF No. 211 at 6 (motion to substitute parties).

All of these deeds use metes and bounds descriptions that exclude the right-of-way, using explicit references to one side of the railroad right-of-way.  "A metes and bounds description in a deed to property that abuts a right of way is evidence of the grantor's intent to withhold any interest in the abutting right of way, and such a description rebuts the presumption that the grantee takes title to the center of the right of way."  *Roeder*, 716 P.2d at 862.  Thus, the Plaintiffs' deed for each of these properties uses a description that excludes the right-of-way, and the centerline presumption is rebutted.  Furthermore, Plaintiffs have produced no documentary evidence in this case that they obtained land underlying the right-of-way through other means. Thus, there is no evidence that they own land underlying the right-of-way, and their claims must be dismissed.

### 2. The Waverly Shores Plat, Referenced in Two Deeds, Excludes the Right-of-Way

Any instrument—whether an individual deed, a plat, or other instrument—in Plaintiffs' chain of title can be used to rebut the centerline presumption under *Roeder*.  When the exclusions appear in a plat, it is irrelevant whether the language of the plat is repeated in Plaintiffs' individual deeds.  "[W]here a deed describes land as a lot laid out on and designated on a certain plat or survey, the plat becomes as much a part of the deed as if it were copied into it."  *Cook v. Hensler*, 107 P. 178, 180 (Wash. 1910); *see also Saterlie v. Lineberry*, 962 P.2d 863, 864 (Wash Ct. App. 1998) (quoting *Moore v. Clark*, 289 P. 520, 523 (Wash. 1930) (noting "[w]here a deed references a map of the land conveyed, the map and the deed are to be construed together, and the map becomes, 'in legal effect, a part of the description.'").

In *Frye v. King County*, the Supreme Court of Washington stated that "[i]t is the well-settled law that in construing a plat the intention of the dedicator controls" and "this intention must be adduced from the plat itself, where possible, as that furnishes the best evidence thereof."

275 P. 547, 548 (Wash. 1929).  The Supreme Court of Washington reaffirmed this rule in *Kiely v. Graves*, 271 P.3d 226, 230-31 (Wash. 2012) (en banc) (quoting *Frye*, 275 P. at 548).  *See also Rainier Ave. Corp. v. City of Seattle*, 494 P.2d 996, 999 (Wash. 1972) (en banc) (noting the key inquiry when interpreting these conveyances is "the intention of the dedicator[.]").  Because the language of the conveyances submitted by the United States is unambiguous, the intent of the grantor "must be determined from a consideration of the plat [or deed] itself and of the descriptions and dedicatory language contained therein . . . ." *Frye*, 275 P. at 548.

DeMers and Radford both owned their properties in September of 1998 through deeds that gave them title to lots, identified by number, in the Waverly Hills subdivision plat.  *See* Exs. 13, 14.[7]  This plat, in turn, illustrates, in graphical form the parcels of property to be platted and conveyed, and provides specific numerical figures for the boundaries of each segment of property.  *See* Ex. 15 (Waverly Hills Plat).  The use of measured boundaries of the lots in the plat and the dedication of all streets in the plat show that the original owners of the land platted as the Waverly Shores subdivision – Cougar Mountain Associates and Factoria Development Corp. – intended to retain title to the land from the eastern boundary of the platted lots to the eastern boundary of the plat, including land underlying 197th Place SE (now East Lake Sammamish Shore Lane SE),[8] the railroad right-of-way, and East Lake Sammamish Road (now Parkway).

---

[7] Connie and Franklin E. Olsen, Barbara Petzold, Carol Fedigan, Betty and Gene Liekhus, in *Waverly Hills Club Inc.*, No. 04-1474L have reached a tentative settlement of their claims with the United States and these claims are not subject to this motion.  This settlement in principle is tentative until approved by an authorized representative of the United States Attorney General.

[8] The county's quarter-section map refers to the street between Plaintiffs' properties and the right-of-way as "E. Lk. Sammamish Shore Lane S.E. (197th Place S.E.)."  *See* Ex. 8. The difference in the name of the street in the plat and on the county's maps does not appear to be material to the issue of title.

When the original plattors of the Waverly Shores subdivision dedicated that the streets shown on the plat, they did so as "*owners in fee simple of the land hereby platted. . . .*"  *See* Ex. 15 (Waverly Shores plat) (emphasis added).[9]  "The dedicator, as the original owner of the land, or his successor possesses the fee in both the street and the abutting lot.  Upon vacation of the road, he can treat these two estates as separate and distinct parcels of land" if he reserves the fee in the underlying street.  *McConiga*, 700 P.2d at 336 (citing *Hagen v. Bolcom Mills*, 133 P. 1000, 1003 (1913)); *see also London v. City of Seattle*, 611 P.2d 781, 787 (1980) (reversionary interest of abutting landowners to centerline of vacated street rebutted when "one abutting owner is shown to have had no fee interest in the street and another the entire fee therein.  In that instance, the abutter that had no underlying fee interest does not take to the center of the street upon its vacation.") (citing *Rowe v. James*, 128 P. 539 (1912)).  The Plaintiffs cannot own more than what was granted in the plat that created their properties in the first instance, which is merely their lot alone, and none of the adjacent property.  To find otherwise would defy the plain, unambiguous language and depiction contained in the plat.

## B.  The "Shorelands" Conveyances did not Convey Property Underlying the Right-of-Way

The property descriptions for one Collins parcel, Barrett, Freedman, Hughes, and Nelson all describe property conveyed as "second class shorelands" in front of or adjacent to an uplands property that is then described using a metes and bounds description.  These are set out in the below table:

---

[9] Even if the street is now a private drive, fee ownership in public and private roads is not treated any differently.  *See McConiga v. Riches*, 700 P.2d 331, 337 (Wash. App. 1985).

| Plaintiff (Taxlot Parcel #): | Abridged description of property conveyed: |
|---|---|
| Collins (202506-9028) | "Shorelands of the second class in front of, adjacent to, or abutting upon Government 2 of "Section 20, Township 25 North, Range 6 East W.M, in King County, Washington, described as follows . . . ." Ex. 16. |
| Barrett (202506-9041 and 202506-9151) | "The southeasterly 475 feet of the second-class shorelands adjoining that portion of Government lot 2, section 20, township 25 north, range 6 east, W.M., described as follows . . . ." Ex. 17. |
| Freedman (202506-9030) | "Second-class shorelands adjoining that portion of Government Lot 2, Section 20, Township 28 North, Range 6 East W.M., described as follows . . . ." Ex. 18. |
| Nelson (202506-9042) | "The Southeasterly 96.00 feet of the Northwesterly 200 feet of the Second Class Shorelands adjoining that portion of Government Lot 2, Section 20, Township 25 North, Range 6 East, W.M., in King County, Washington, described as follows . . . ." Ex. 19. |
| Hughes (202506-9085) | "The northeasterly 200 feet of the Second Class Shorelands adjoining that portion of Government lot 2, Section 20, Township 25 North, range 6, EWM, in King County, Washington, described as follows . . . ." Ex. 20. |
| Hughes (202506-9071) | "[S]econd class shorelands conveyed to the above-named grantor from the State of Washington by deed dated September 19, 1951 . . . ." Ex. 21. |

Under Washington law, second-class shorelands are "shores of a navigable lake or river belonging to the state, not subject to tidal flow, *lying between the line of ordinary high water and the line of navigability*, and more than two miles from the corporate limits of any city." WASH. REV. CODE § 79.105.060 (2017) (emphasis added).[10] In sum, under state law, "second-class shorelands" are defined as lands underwater. As a factual matter, it is not clear how these shorelands became the dry lands that these Plaintiffs' homes sit on today, but the Court does not

---

[10] The modern-day statutory definition is similar to that promulgated in 1959, shortly before Ms. Earley conveyed shorelands to Barrett and Hughes (*see* Exs. 17, 20), which defined "second class shorelands" as:

> public lands belonging to the state bordering on the shores of a navigable lake or river not subject to tidal flow, between the line of ordinary high water and the line of navigability and more than two miles from the corporate limits of any city.

WASH. REV. CODE § 79.01.032 (June 25, 1959). *See* Ex. 22.

need to resolve that issue to find that Plaintiffs whose deed only gives them title to "shorelands" do not have title to land underlying the right-of-way.

Mr. Palmberg's conveyance to the railroad could not have included shorelands.  Mr. Palmberg conveyed the right-of-way adjacent to these properties to the railroad on June 13, 1887.  *See* ECF No. 109-7 at 2 (Palmberg source deed conveying right-of-way 50 feet wide on either side of a described centerline through lots 1 through 4 of Section 20[11] and Lot 2 in Section 19, Township 25 North, Range 6 East); *Beres v. United States*, 97 Fed. Cl. 757, 763 (2011).  The deed does not include "shorelands" in the description of the property conveyed to the railroad. *See* ECF No. 109-7 at 2 (Palmberg source deed).

Nor could Mr. Palmberg convey shorelands to the railroad in 1887, because at that time, Washington State was a territory, and all shorelands underlying navigable waters were owned by the United States.  *See Bonelli Cattle Co. v. Arizona*, 414 U.S. 313, 321–22 (1973) ("title to the beds beneath navigable waters is held by the sovereign . . . ." (quoting *Barney v. Keokuk*, 94 U.S. 324, 338 (1876)), *overruled on other grounds by Oregon ex rel. State Land Bd., v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 382 (1977); *Narrows Realty Co v. State*, 329 P.2d 836, 839 (Wash. 1958) ("Before statehood, the United States held title to all of the land, which is now within the boundaries of the state of Washington, in trust for the future state . . . .") (citations omitted).  When Washington became a state in 1889, under the equal footing doctrine shorelands underlying navigable waters became the property of the State of Washington, except for shorelands already patented.  *See* Wash. Const. art. XVII § 1; *Narrows Realty Co.*, 329 P.2d at 839.  Thus, Mr. Palmberg could not have conveyed shorelands he did not own to the railroad in 1887.  *Cf. Kaseburg v. Port of Seattle*, 2016 WL 4440959, at *4 (landowners adjoining portion

---

[11] Lots 1 and 2 are adjacent to Lake Sammamish.  *See* Ex. 23 (Government Lot map).

of railroad that was originally shorelands did not have reversionary interest in right-of-way because shorelands were owned by the state at the time of conveyance to the railroad).

Washington conveyed the shorelands on the western side of the right-of-way in Government Lots 1 and 2 of Section 20, Township 25 North, Range 6 East, Willamette Meridian through three separate conveyances, all of which occurred after statehood and construction of the railroad. In 1928, Washington conveyed the shorelands in the section of Government Lot 2 where the Collins parcels and the community beach parcel are located. *See* Ex. 24 (Turner shorelands deed); Ex. 23 (government lot map). In 1940, Washington conveyed the shorelands in the section of Government Lot 2 where the Barrett, Freedman, Nelson, and the southernmost Hughes parcels are located to Alfred Palmberg, Maude Palmberg, Annie Stangroom, Bessie Zengel, Gertie Gorman, and Bert Stares. Ex. 25. The State conveyed the shorelands in the section of Government Lot 1 where the northernmost Hughes parcel is located to Gertie Gorman Hughes in 1951. Ex 26. Since the right-of-way had already been conveyed by Mr. Palmberg to the railroad long before, these conveyances of shorelands could not have included land underlying the right-of-way, and there is no evidence that these Plaintiffs obtained title to land underlying the right-of-way through a different mechanism. Thus, the Collins, Barrett, Freedman, Nelson, and Hughes' Plaintiffs' title to "shorelands" could not grant them any interest in land underlying the right-of-way, and their claims that are based on ownership of these properties must be dismissed.

## II. Plaintiffs Cannot Adversely Possess the Reversionary Interest in the Right-of-Way

Now, thirteen years into the litigation, in an effort to defeat the arguments establishing the lack of a property interest in the right-of-way, certain Plaintiffs (Donald Barrett, Collins, D. Michael and Vanessa Collins (*Collins*, No. 04-1472L); Estate of William Hughes, Robert and Beth Nelson (*Nelson*, No. 04-1465L); Donna Marie Raab Matrinez (*Peterson*, No.04-1459L);

21

Clifford and Kathryn Schroeder (*Schroeder*, No. 04-1457L); Reid and Susan Brockway, John

Rossi, Raymond and Lael Spencer (*Spencer*, No. 04-1463L); Brian and Mary Conway, Scott and

Sandra DeMers, Foster and Lemoine Radford (*Waverly Hills Club, Inc.* No. 04-1474L); Paul and

Joanne Spears (*Estate of Welch*, No. 04-1471L)) allege that they own portions of the right-of-

way through adverse possession.[12]  Plaintiffs cannot claim ownership of the reversionary interest

underlying the right-of-way through adverse possession because: (1) Plaintiffs' adverse

possession claims are preempted by the ICCTA; (2) Plaintiffs are prevented by law from

adversely possessing portions of the right-of-way patented to the railroad through the 1875 Act;

and (3) Plaintiffs cannot adversely possess against a reversionary interest under Washington state

law.

### A.  Plaintiffs' Adverse Possession Claims are Preempted Under the ICCTA

Notwithstanding the Court's lack of jurisdiction to entertain unperfected adverse

possession claims, Plaintiffs' adverse possession claims under Washington law are preempted by

the I.C.C. Termination Act of 1995 ("ICCTA").  At this stage of the litigation, it remains unclear

which specific portions of the right-of-way Plaintiffs allege they have obtained through adverse

possession, though they do not dispute that they lie within the 12.45 mile right-of-way.  Pls' Br.

In Support of Their Mot. for an Order Affirming this Court Has Jurisdiction to Determine

Whether the Land Taken by the U.S. Had Been Adversely Possessed by Certain Pls. Prior to the

---

[12] The only waiver of sovereign immunity applicable here is the Tucker Act, 28 U.S.C. § 1491, which does not waive the United States' immunity to suit in cases predicated on property interests that have not been perfected against third-parties.  *See United States v. Sherwood*, 312 U.S. 584, 588 (1941) (stating that a Tucker Act Claim must be dismissed if "maintenance against private parties is prerequisite to prosecution of the suit against the United States . . . .").  The United States renews its objection that this Court does not have jurisdiction to entertain Plaintiffs' adverse possession claims because they must be adjudicated in a Washington state proceeding before they can be asserted against the United States in a takings case.

Taking 1, ECF No. 202-1 ("Pls. Br. In Supp.").  None were specifically pled in the complaint and there is no underlying quiet title action to inform the parties' understanding.  Due to the absence of a deed or other documentation, Plaintiffs here would purportedly adversely possess portions of the right-of-way under a claim of right.  Plaintiffs' claims are displaced by the ICCTA even though the right-of-way is not currently used for rail operations.

The ICCTA was implemented by Congress on January 1, 1996 to eliminate the ICC, modify the regulation of railroads under a new agency, and expand the express preemption provision of the Interstate Commerce Act, 49 U.S.C. § 10501(b).  The statute created the Surface Transportation Board ("STB") and confers upon it exclusive jurisdiction over certain interstate railroad activities.  In the ICCTA, Congress specifically provided the STB with broad, exclusive jurisdiction over:

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, is exclusive.  Except as otherwise provided in this part, the remedies provided under this part with respect to regulation or rail transportation are exclusive and preempt the remedies provided under Federal or state law.

49 U.S.C. §10501(b).

The STB and numerous courts around the country have found that state law condemnation or adverse possession claims falls within the ICCTA's preemptive scope.  *See Union Pac. R.R. v. Chi. Transit Auth.*, 647 F.3d 675 (7th Cir. 2011) (finding that a state condemnation action was preempted because it would unreasonably interfere with transportation on the rail right-of-way); *B & S Holdings, LLC v. BNSF Ry. Co.*, 889 F. Supp. 2d 1252, 1259 (E.D. Wash. 2012) (holding that state adverse possession claims are preempted by the ICCTA in

part, because the state law claims would divest the railroad of the very property upon which it runs its operations); *Buffalo S. R.R. Inc. v. Village of Croton-on-Hudson*, 434 F. Supp. 2d 241 (S.D.N.Y. 2006) (finding that eminent domain proceedings would unreasonably interfere with railroad operations); *Wis. Cent. Ltd. v. City of Marshfield*, 160 F. Supp. 2d 1009, 1013-1014 (W.D. Wis. 2000) (noting that Congress' intent was to free railroad operations from state regulatory authority); *see also Jie Ao and Xin Zhou – Pet. for Declaratory Order*, ("*Jie Ao*") STB Finance Docket No. 35539, 2012 WL 2047726, at *5 (STB served June 4, 2012).[13]

1. **The Surface Transportation Board has already decided the question of whether state law adverse possession claims are preempted under the ICCTA**

The STB and courts apply a two-part test to determine whether state law is preempted by the ICCTA. First, there are those state actions that are 'categorically preempted' by the ICCTA because such actions 'would directly conflict with exclusive federal regulation of railroads.'" *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 332 (5th Cir. 2008) (quoting *CSX Transp., Inc.—Pet. for Decl. Order* ("*CSX*"), STB Finance Docket No. 34662, 2005 WL 1024490, at *2–*3 (STB served May 3, 2005)).

> Regulations falling within this first category are "facially preempted" or "categorically preempted" and come in two types: "The first is any form of state or local permitting or preclearance that . . . could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the Board has authorized . . . . Second, there can be no state or local regulation of matters directly regulated by the Board—such as the construction, operation, and abandonment of rail lines (*see* 49 U.S.C. 10901–10907); railroad mergers, line acquisitions, and other forms of consolidation (*see* 49 U.S.C. 11321–11328); and railroad rates and service (*see* 49 U.S.C. 10501(b), 10701–10747, 11101–11124)."

---

[13] While these cases deal with adverse possession of the surface easement, and not adverse possession of the reversionary interest, the same actions that Plaintiffs allegedly took to adversely possess the underlying fee also encroached on the railroad's easement. *See Kiely*, 271 P.3d 226 at 234 ("It is ultimately not possible to separate the adverse possession of the [underlying] fee simple interest from the encroachment upon the public easement.").

*Id.* (quoting *CSX*, 2005 WL 1024490, at *2).

The second category of preemption is "as-applied" preemption,[14] which is:

based on the degree of interference the particular state action has on railroad operations. "For state or local actions that are not facially preempted, the section 10501(b) preemption analysis requires a factual assessment of whether that action would have the effect of preventing or unreasonably interfering with railroad transportation."

*Id.* (quoting *CSX*, 2005 WL 1024490, at *2); *see also Tubbs v. Surface Transp. Bd.*, 812 F.3d 1141, 1144–45 (8th Cir. 2015) (state regulation preempted if it "would have the effect of unreasonably burdening or interfering with rail transportation." (citing *Franks Inv. Co. LLC v. Union Pac. R.R. Co.*, 593 F.3d 404, 414 (5th Cir. 2010)); *Island Park, LLC v. CSX Transp.*, 559 F.3d 96, 103 (2d Cir. 2009); *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 220–21 (4th Cir. 2009) (other citations omitted)); *Maumee & W. R.R. Corp. & RMW Ventures, LLC—Pet. for Decl. Order*, FD 34354, 2004 WL 395835, at *1 (STB served March 3, 2004) ("state and local regulation is permissible where it does not interfere with interstate rail operations . . . .").

The STB has held that the ICCTA preempts adverse possession claims even when the property is not currently used for rail purposes, or is railbanked. *Jie Ao*, 2012 WL 2047726, at *6; *see also Union Pacific*, 647 F.3d at 681 (finding that the condemnation of a railroad not in use was still preempted under the ICCTA because it would prevent the railroad from using the

---

[14] The Washington Supreme Court determined that "adverse title can be gained to land granted and conveyed as a railroad right-of-way, but the adverse possession must be such as is *inconsistent with the right of way easement*." *Netherlands Am. Mortg. Bank v. E. Ry. & Lumber Co.*, 252 P. 916 (Wash. 1927) (emphasis added) (citing *N. Pac. Ry. Co. v. Spokane*, 88 P. 135 (Wash. 1907)); *see also State v. Ballard*, 287 P. 27, 28–29 (Wash. 1930) (title in portion of railroad established by adverse possession because adverse possessor's use was "entirely inconsistent with its use of the land as a right of way."). Because adverse possession has to be inconsistent with the right-of-way easement, these same uses must also be preempted under the as-applied test due to their interference. *See Tubb*s, 812 F.3d at 1141.

25

right-of-way for transportation in the future).[15]  Similar to the facts of this case, in *Jie Ao*

plaintiffs attempted to adversely possess property adjacent to a railroad right-of-way that was to

be used for a local recreational trail.  2012 WL 2047726, at *1–3.  Plaintiffs there argued that

ICCTA preemption was inapplicable because some of the property in the right-of-way had never

been used for railroad operations.  *Id.* at *7 & n.8.  The STB, however, rejected this argument

and instead found that "state adverse possession law would unreasonably interfere with potential

future railroad operations. . . ."  *Id*  at *3.  And this interference would occur even in the absence

of current plans to use the property for rail use – the STB stated that plaintiffs approach would

allow

> landowners to carve off strips of railroad ROW all over the country for non-rail use,
> even though the [STB] has not authorized the ROW to be permanently removed
> from the nation's rail system under Title 49.  That untenable result would
> undermine interstate commerce and the strong federal policy in favor of retaining
> rail property in the national rail network, where possible.

*Jie Ao*, 2012 WL 2047726, at *7 (citing 49 U.S.C. § § 10904, 10907 and 16 U.S.C. § 1247(d)).

This Court should reach the same outcome as the STB because Plaintiffs' adverse possession of

portions of the right-of-way would prevent BNSF (formerly Burlington Northern Railroad

Company) from reactivating the line and conducting future rail operations, thereby carving strips

of the right-of-way out of the national rail system.  *Id.*[16]

---

[15] *See also Jie Ao*, 2012 WL 2047726at *5, n.4 (Noting that "adverse possession has the same
legal effect on the property as condemnation – elimination of the prior ownership interest in the
property.").

[16] This Court should also follow the STB's decision in *Jie Ao* because the STB's interpretations
of the ICCTA are generally afforded deference under the standards set out in *Chevron U.S.A.
Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–844 (1984); *see DHX, Inc. v.
Surface Transp. Bd.*, 501 F.3d 1080, 1086 (9th Cir. 2007); *see also Ass'n of Am. R.R. v. S. Coast
Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1097 (9th Cir. 2010).

Applying *Jie Ao*, the United States District Court for the Eastern District of Washington ruled that state law adverse possession claims that would divest a railroad of its property are categorically preempted.  *B&S Holdings, LLC v. BNSF Railway Co.*, 889 F. Supp. 2d 1252, 1256–57 (E.D. Wash. 2012).  In *B&S Holdings LLC,* plaintiffs sued to quiet title in a building and a fenced parking area that encroached upon adjacent BNSF property.  889 F. Supp. 2d at 1254.  Plaintiffs argued that it had adversely possessed portions of the BNSF's property through erection of its encroachments.  *Id.*; *see also* Pl.s' Br. In Supp. 1, ECF 202-1.  However, the court found that granting plaintiffs fee simple title would "unquestionably prevent BNSF from constructing, acquiring and operating its facilities."  *B&S Holdings*, 889 F. Supp. 2d at 1260.  Similarly, Plaintiffs here allege that they have adversely possessed portions of the right-of-way and as in *B & S Holdings LLC,* adverse possession of these portions of the railroad would prevent the BNSF railroad from reactivating the line and resuming rail operations in the future, if necessary.  *See* 889 F. Supp. 2d at 1258.  Under the Trails Act, railroad rights-of-way are subject to reactivation and future use as a rail line.  16 U.S.C. § 1247(d).  As the STB and the Eastern District of Washington have found, adverse possession claims, such as those Plaintiffs' seek to assert here, interfere with this potential reactivation, and are therefore preempted by federal law.

### B.  Plaintiffs Cannot Adversely Possess Portions of the Right of Way Patented to the Railroad through the 1875 Act

Plaintiffs alleging adverse possession in the *Estate of Welch* and *Waverly Hills Club* cases are unable to establish adverse possession because the portion of the right-of-way in front of these Plaintiffs' parcels is subject to the 1875 Act.  Plaintiffs' arguments fail as a matter of law because a landowner cannot adversely possess portions of the right-of-way the United States

granted to the railroad through the 1875 Act.[17]  "[R]ight[s]-of-way granted by Congress cannot

be diminished by . . . the doctrine[] of adverse possession . . . . Congressional intent as to this

result is plainly manifest and that, under the grant, railroads are legally incapable of alienating

the subject property in any way, directly or indirectly." *Boise Cascade Corp. v. Union Pac. R.R.

Co.*, 454 F. Supp. 531, 533 (D. Utah 1978) (citing *N. Pac. Ry. v. Townsend*, 190 U.S. 267 (1903);

*Himonas v. Denver & R.G.W.R. Co.*, 179 F.2d 171 (10th Cir. 1949); *Allard Cattle Co. v. Colo. &

So. Ry. Co.*, 516 P.2d 123 (1973)), *aff'd*, 630 F.2d 720 (10th Cir. 1980); *see also Marshall v. Chi.

& Nw. Transp. Co.*, 826 F. Supp. 1310, 1314 (D. Wyo. 1992) *aff'd*, 31 F.3d 1028 (10th Cir.

1994) (1875 Act right-of-way could only be adversely possessed after abandonment).

As the United States Supreme Court has found, "[t]he tract in question was not granted

for private use or disposal, but only for the quasi-public uses named in the act." *Great N. Ry. Co.

v. Steinke*, 261 U.S. 119, 132 (1923).  "[N]either laches on the part of the company nor any local

statute of limitations can invest individuals with any interest in the tract, [n]or with a right to use

it for private purposes, without the sanction of the United States." *Id.* at 133 (citing *N. Pac. Ry.

Co v. Smith*, 171 U. S. 260, 275 (1898); *N. Pac. Ry. Co. v. Townsend*, 190 U.S. 267 (1903); *N.

Pac. Ry. Co. v. Ely*, 197 U. S. 1 (1905); *Kindred v. Union Pac. R.R. Co.*, 225 U.S. 582, 597

(2012); *Stuart v. Union Pac. R.R. Co.*, 227 U. S. 342, 353 (1913)).  Thus, the *Estate of Welch* and

*Waverly Hills Club* Plaintiffs could not have adversely possessed the portions of the right-of-way

in front of their properties, which are subject to the 1875 Act, prior to issuance of the NITU.

Their claims must therefore be denied.

---

[17] Portions of the right-of-way the railroad acquired through the 1875 Act are adjacent to the
properties owned by Spears (*Estate of Welch*) and all of the Plaintiffs in *Waverly Hills Club*.  *See*
*Beres v. United States*, 104 Fed. Cl. 408, 413 (2012).

## C.  Under Washington State Law, Plaintiffs Cannot Adversely Possess A Reversionary Interest

These same plaintiffs (Donald Barrett, Collins, D. Michael and Vanessa Collins, Howard and Pam Freedman (*Collins*, No. 04-1472L); Estate of William Hughes, Robert and Beth Nelson (*Nelson*, No. 04-1465L); Donna Marie Raab Matrinez (*Peterson*, No.04-1459L); Clifford and Kathryn Schroeder (*Schroeder*, No. 04-1457L); Reid and Susan Brockway, John Rossi, Raymond and Lael Spencer (*Spencer*, No. 04-1463L); Brian and Mary Conway, Scott and Sandra DeMers, Foster and Lemoine Radford (*Waverly Hills Club, Inc.* No. 04-1474L); Paul and Joanne Spears (*Estate of Welch*, No. 04-1471L)) allege that they have adversely possessed unspecified portions of the right-of-way against third-party owners of reversionary interests in the corridor.  Plaintiffs have failed to identify the owners of the reversionary interest.  Putting aside this deficiency, Plaintiffs' claims are foreclosed as a matter of law by Washington state law.

Plaintiffs are barred by state law from adversely possessing against the reversionary interest in the right-of-way before the reversionary interest becomes a present possessory interest in the right-of-way; in other words, before the right-of-way is abandoned.  The Washington Supreme Court, sitting *en banc*, has unambiguously held that "[a]n adverse possession claim cannot be asserted against a reversionary interest or a remainder interest until the future interest becomes a vested interest."  *Kiely*, 271 P.3d at 233 (citing *Martin v. Walters*, 490 P.2d 138 (1971); *Nw. Indus., Inc. v. City of Seattle*, 658 P.2d 24 (1983)).  In *Kiely v. Graves*, the plaintiffs claimed that they adversely possessed the entirety of an alley dedicated to public use in a plat against the reversionary interest of the fee owner of property on the other side of the alley.  The Court held that the Kielys were unable to obtain title through adverse possession while the alley was held by the city as an easement.

29

The holding in *Kiely* is consistent with Washington law that limits standing in Quiet Title Act and ejectment actions to those parties having "a right to . . . possession."  *See* WASH. REV. CODE § 7.28.010 (2017).  A party who only holds a reversionary interest in a right-of-way "do[es] not have a present interest in the property that would give them standing to seek" to quiet title in the right-of-way.  *Wash. Sec. & Inv. Corp. v. Horse Heaven Heights, Inc.*, 130 P.3d 880, 885–86 (2006).  This limitation stems from long-held Washington common law that holds that a reversionary or remainder interest is not a

> present and existing right[] of possession, but only a present interest, with a future right of possession. It would be unprecedented to hold that a right of entry was barred, where such a right had never accrued . . . When the particular estate is spent, the bar falls with that estate, and the right of entry then accrues to the remainderman or reversioner, and then, and not till then, the statute begins to run against him.

*McDowell v. Beckham*, 130 P. 350, 353 (1913).  For this reason, the holder of a reversionary interest "may rest secure in reliance upon his record title . . . ."  *See id.* at 229.[18]  Because Plaintiffs could not establish ownership in the right-of-way through adverse possession before issuance of the NITU, and they do not have record title and their claims must be dismissed.

## CONCLUSION

Plaintiffs' attempted reliance on the centerline presumption to establish ownership in the right-of-way fails because instruments in their chain of title—including plats and their current deeds—preclude application of the presumption under *Roeder* and refute their claims to any ownership of any portions of the right-of-way.  Because Plaintiffs have no ownership in the

---

[18] Washington law follows the common law rule in other states, which holds that the adverse possession period cannot start until the holder of the reversionary interest has possession of the property.  *See, e.g.*, *Harkleroad v. Linkous*, 704 S.E. 2d 381 (2011) (Virginia); *State v. Beeson*, 232 S.W.3d 265, 277 (Tex. Ct. App. 2007) (Texas); (*Piel v. Dewitt*, 351 N.E.2d 48, 53 (1976) (Indiana); *McCrory Sch. Dist. of Woodruff Cty. v. Brogden*, 333 S.W.2d 246, 251 (1960) (Arkansas) *Stein v. White*, 143 N.E. 124, 126 (1924) (Ohio).

right-of-way, the United States effected no taking on their properties under the Trails Act and their claims should be dismissed.

As to those plaintiffs who claim ownership of some unspecified part of the right-of-way through adverse possession, their claims fail as a matter of law because under federal law adverse possession of a railroad right-of-way is facially preempted by statute, Congressionally-granted rights of way cannot be adverse possessed, and under state law Plaintiffs cannot adversely possess against a reversionary interest.

Accordingly, because Plaintiffs possess no ownership interest in the rail corridor, and because Plaintiffs adverse possession claims are legally untenable, the Court should grant the United States' motion for partial summary judgment and enter judgment for the United States.

Respectfully submitted this <u>1st</u> day of December 2017,


JEFFREY H. WOOD
Acting Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

<u>*/s/ Tanya Nesbitt*</u>
TANYA C. NESBITT
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
601 D Street, NW
Washington, D.C. 20004
(202) 305-0457 (phone)
tanya.nesbitt2@usdoj.gov

*Attorney for the United States*