### IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **WARREN BERES and VICKI BERES,** *et al.*, | ) ) ) | |
| **Plaintiffs,** | ) ) | Nos. 03-785L, 04-1456L, 04-1457L, 04-1458L, 04-1459L, 04- |
| **v.** | ) ) | 1463L, 04-1465L, 04-1466L, 04-1467L, 04-1468L, 04-1469L, 04- |
| **UNITED STATES,** | ) ) | 1471L, 04-1472L, 04-1473L, 04-1474L |
| **Defendant.** | ) ) ) | The Honorable Marian Blank Horn |

---

### Declaration of Charles A. Klinge in Support of Plaintiffs' Opposition and Cross Motion Re: Chain of Title

---

I, Charles A. Klinge, make the following declaration:

1. I am an attorney with Stephens & Klinge LLP. I have been an attorney since 1990 and admitted to practice in the State of Washington since 1996. I have extensive experience with title matters in the State of Washington and appeared as an expert witness on title issues in State of Washington Superior Court for Snohomish County. I have been admitted to practice before this Court. This Declaration addresses the chain of title for Spencer/Rossi/Brockway, Matrinez, Schroeder, and Nelson/Hughes.

2. References herein to the Joint Appendix that was previously filed will be as "*JA*" in the following form, including the Bates stamped page number if any and where relevant: *<volume> JA Tab <JA Tab No.>:<Bates pg.>*. Exhibits are

Ex. 3-1

submitted concurrently herewith as part of this Declaration. All exhibits are true and correct copies of the documents of which they are described to be. Unless otherwise noted, all references to Exhibit or "*Ex.*" refer to the Exhibits submitted as part of this Declaration which are numbered A through Z, AA through ZZ, and AAA through ZZZ. This Declaration is Plaintiffs' Exhibit 3. Each Exhibit to this Declaration has its own page numbers so Exhibit A, page 1, is stamped "Ex. 3A-1." References herein will include the Exhibit reference to this Declaration and page numbers where relevant and be in the following form: *Ex. <Ex. No.>:<pg.>.*

3. King County was formed in 1852 as part of the Oregon Territory. In 1853, King County became part of the Washington Territory, and in 1889 King County became part of the State of Washington. The King County Auditor and later the Recorder's Office within the Auditor's Office have continuously maintained the property records of King County. Generally, a single number was provided for each recorded document and often along with a Book and Page or Volume and Page. The single number was referred to as Auditor's File No., or AFN, and later usually referred to simply as Recording No. In this Declaration, for simplicity and unless otherwise noted, I will refer to all King County recorded documents by the single number when available as "Rec. No." along with the date of recording if available. The King County Assessor, *i.e.,* the tax assessor, is responsible for taxation of all real property according to the quantity and quality thereof, and certain County Assessor records were reviewed for this chain of title review.

## CHAIN OF TITLE – SPENCER/ROSSI/BROCKWAY

4.  I investigated the chain of title for: Raymond C. Spencer and Lael S. Spencer, in relation to: (1) King County Parcel No. 173870-0035, 133 East Lake Sammamish Lane NE, City of Sammamish, King County, Washington, and the adjacent right of way ("Spencer Property"); (2) John M. Rossi and Carolyn S. Rossi, in relation to King County Parcel No. 173870-0130, 251 East Lake Sammamish Lane NE, City of Sammamish, King County, Washington, and the adjacent right of way ("Rossi Property"); and, (3) Reid E. Brockway and Susan M. Brockway, in relation to King County Parcel No. 173870-0080, 167 East Lake Sammamish Lane NE, City of Sammamish, King County, Washington, and the adjacent right of way ("Brockway Property").  Jointly, these three properties will be referred to as Spencer Group Properties or Spencer/Rossi/Brockway.

5.  Fidelity National Title Insurance Company was retained to produce chain of title reports for each of the parcels in the Spencer Group Properties.  The chain of title reports as provided herewith for the Spencer Property as *Ex. A*, for the Rossi Property as *Ex. B*, and for the Brockway Property as *Ex. C*.  Each report lists item numbers corresponding to a recorded document.  References herein will be to the respective Fidelity Title report and item number, e.g. *Ex. A* (Fidelity Title: Spencer #<no.>).  The chain of title for Spencer/Rossi/Brockway is the same for the first seven items—items #1 to #7.  Fidelity Title also provided additional recorded documents or copies thereof referenced herein.  Any referenced recorded documents

requiring further attention will be provided as separate Exhibits.  Additional research was done regarding certain probate records described herein.

6.  The Spencer Group Properties are located in Section 32, Township 25 North, Range 6 East, Willamette Meridian ("W.M."), specifically in Government Lot 2 thereof.  The Spencer Group Properties' chain of title begins with Jim Yonderpump who obtained a United States Government land patent in 1884.  *3 JA Tab 138, 139*; *see also Ex. A:3* (Fidelity Title: Spencer #5; dated December 4, 1884, recorded August 25, 1920; Rec. No. 1445492).  The land described in the patent was: Government Lot 2 <u>and</u> the Southwest Quarter of the Northeast Quarter of Section 32, Township 25 North, Range 6 East, W.M.  Jim Yonderpump and Alice Yonderpump granted a right of way deed to Seattle Lake Shore & Eastern Railway in 1887.  *3 JA Tab 140*; *see also 5 JA Tab 210* (transcribed deed); *Ex. A:3* (Fidelity Title: Spencer #1; May 7, 1887; Rec. No. 13453).

7.  In 1911, Jim Zacuse and Alice Zacuse (formerly Alice Yonderpump, widow of Jim Yonderpump and sole heir) deeded land to George Clark and Tolle Anderson.  *Ex. A:3* (Fidelity Title: Spencer #2; November 20, 1911; Rec. No. 778238).  George Clark quit claimed land to Jessie Clark.  *Ex. A:3* (Fidelity Title: Spencer #3; July 27, 1920; Rec. No. 1437669).  These conveyances related to the north 20 acres of Government Lot 2.  The remainder of Government Lot 2 was deeded by Zacuse to W. Baron Cook.  *Ex. D* (copy; January 27, 1919; Rec. No. 1435349 being a re-record of Rec. No. 1276686).  W. Baron Cook then deeded the remainder of Government Lot 2 to Tolle Anderson (and his wife Christine Anderson) and Jessie Clark.  *Ex. E*

(copy; December 29, 1919; Rec. No. 1435350 being a re-record of Rec. No. 1376785). Then, Tolle and Christine Anderson and Jessie Clark, sold the entire Government Lot 2 to William A. Connell via a real estate contract.[1]  *Ex. A:3* (Fidelity Title: Spencer #6; September 21, 1920; Rec. No. 145305).  A deed was subsequently recorded to Connell.  *Ex. A:4* (Fidelity Title: Spencer #7; August 8, 1923; Rec. No. 1767525).

8.  William A. Connell deeded off a portion of Government Lot 2 in 1923, namely deeded a portion to Andrew Breckberg.  *Ex.YYY*  (August 8, 1923; Rec. No. 1767526).  The legal description of that deed described the land easterly of the County Road and the most northerly 10 feet west of the railroad right of way adjacent to the north line of Government Lot 2.  The legal description conveyed no portion of the railroad right of way.

9.  William A. Connell died in 1928.  Probate records were obtained and reviewed related to William A. Connell.  *Ex. OOO* (King County Superior Court Probate No. 43692).  The Inventory listed the following property:

> That portion of Government Lot 2, Section 32, Township 25 North, Range 6 E, W.M., lying West of the Northern Pacific Railroad right of way, together with the shore lands of the second class fronting thereon, less the north ten feet previously conveyed.

*Ex. OOO* (February 1928).  William A. Connell was survived by his wife Agnes Elizabeth Connell and son Willis J. Connell.  Willis J. Connell took control of the property.

---

[1] In the State of Washington, a real estate contract is a form of installment contract in which the seller retains title until the contract is paid off, or "fulfilled," then a deed is recorded legally transferring the property.  The deed may be called a Fulfillment Deed.

10.  Willis J. Connell sought to subdivide the property with 31 waterfront lots (almost all 50 feet in width) and prepared a map for that purpose dated March 1927.  However, Connell's plat map was not recorded at the Auditor's Office likely because Connell never obtained approval for the subdivision from King County. Nevertheless, at least two versions of Connell's plat map have survived and are used for reference purposes, thus deed legal descriptions often refer to the unrecorded plat map.  *Ex. F* and *Ex. G*.  For example, the Spencer deed adds the following to the legal description: "ALSO KNOWN AS Tract 8 and the northeasterly 25 feet of Tract 7, Connell's Subdivision of Government Lot 2, according to the unrecorded plat thereof."  In King County, Washington, title companies, surveyors, and the County retain copies of unrecorded plats for reference purposes since the property owner intended to subdivide the property according to the unrecorded plat, and typically did subdivide the property by conveying referenced lots.  However, additional legal descriptions are often added as required by the County Auditor and County Tax Assessor to properly document the precise land area.  The second version of Connell's plat map provides distances from the south line of Government Lot 2 northerly along the westerly line of the railroad right of way to each lot corner.  *Ex. G*.  Those distances along the right of way as set forth in the unrecorded plat map are the same in current legal descriptions.

11.  The chain of title for the Spencer Group Properties diverges from Willis J. Connell forward to Spencer, Rossi, and Brockway.  Willis J. Connell died in 1981. Probate records were obtained and reviewed related to Willis J. Connell (King

6

County Superior Court Probate No. 81-4-03328-5). The Inventory referenced no real estate in Section 32. The chain of title for the Spencer Property demonstrates that Willis J. Connell was the record owner of property within the Connell Plat until at least 1956. An aerial photo of the area was obtained that was taken May 11, 1953 (Source: Quantum Spatial), and the land in the Connell Plat is shown in zoomed format on two pages south and north. *Ex. PPP*.

12. **Spencer Property**: With respect to the Spencer Property, Willis J. Connell deeded tract 8 and the northeasterly 25 feet of tract 7 of the unrecorded plat to Doris McCarty. *Ex. A:4* (Fidelity Title: Spencer #8; July 17. 1956; Rec. No. 4712061). The legal description references the width of the lot as 75.00 feet along the right of way and also references tract 8 and 25 feet of tract 7 of the unrecorded plat. Then, in 1992, Ray H. Patchin, as the personal representative of the Estate of Doris R. McCarty, deeded the same property, the Spencer Property, to Raymond C. Spencer and Lael S. Spencer. *Ex. H* (deed); *Ex. A* (Fidelity Title: Spencer #8; August 17, 1992; Rec. No. 9208171392). The legal description was as follows:

> That portion of Government Lot 2 in Section 32, Township 25 North, Range 6 East, in King County, Washington, described as follows:
>
> Beginning at the intersection of a line of said Government Lot 2 with the southwesterly line of the Northern Pacific Railway right-of-way; thence north 38 degrees 00 minutes 00 seconds east along said right-of-way line 313.29 feet to the true point of beginning; thence continuing north 38 degrees 00 minutes 00 seconds east along said right-of-way  line 75.00 feet; thence north 52 degrees 00 minutes 00 seconds west 230 feet more or less to the westerly line of said Government Lot 2; thence southwesterly along said westerly line to a point which bears north 52 degrees 00 minutes 00 seconds west from the true point of beginning;

thence south 52 degrees 00 minutes 00 seconds east 230 feet more or less to the point of beginning;

(ALSO KNOWN AS Tract 8 and the northeasterly 25 feet of Tract 7, Connell's Subdivision of Government Lot 2, according to the unrecorded plat thereof.)

TOGETHER WITH second class shorelands fronting thereon.

*Ex. H:2.*

13.   No deeds or other conveyances were located in which Willis J. Connell transferred to anyone else any interest in the railroad right of way adjacent to the Spencer Property after a search was made and after inquiries to title companies.

14.   In conclusion, the Spencer Property includes the land adjacent to the westerly line of the railroad right of way, specifically tract 8 and the northeasterly 25 feet of tract 7 of Connell's unrecorded plat.  In regards to that land, Raymond C. Spencer and Lael S. Spencer are the successors to the original private property owners, Jim and Alice Yonderpump, who granted the Right of Way Deed to Seattle Lake Shore & Eastern Railway after previously obtaining the United States Government land patent for Government Lot 2 of Section 32.

15.   **Rossi Property:** With respect to the Rossi Property, the Rossi ownership is of tract 26 and a portion of tract 27 of Connell's unrecorded plat.  Willis J. Connell deeded tracts 26 and 27 separately and, after a series of transactions, tracts 26 and 27 came into the same ownership in Rossi's immediate predecessor.  Regarding tract 26, Willis J. Connell entered a real estate contract to sell tract 26 to M. J. Fohn, which contract was fulfilled and a deed recorded to Fohn Investment, Co.  *Ex. B:4* (Fidelity Title: Rossi #12; February 11, 1933; Rec. No. 2749558).  Regarding,

Ex. 3-8

tract 27, Willis J. Connell deeded tract 27 to Ethel Berry. *Ex. B:4* (Fidelity Title: Rossi #9; November 18, 1931; Rec. No. 2699313). Ethel C. Berry deeded tract 27 to Fohn Investment Co. *Ex. B:4* (Fidelity Title: Rossi #11; November 28, 1931; Rec. No. 2700627). Fohn Investment Co. deeded tract 26 to Lewis J. Bailey. *Ex. B:4* (Fidelity Title: Rossi #15; September 18, 1941; Rec. No. 3191538). Fohn Investment Co. deeded tract 27 to M. J. Fohn, widower. *Ex. B:5* (Fidelity Title: Rossi #16; April 24, 1944; Rec. No. 3382366). M. J. Fohn deeded tract 27 to Lewis J. Bailey. *Ex. B:5* (Fidelity Title: Rossi #17; February 15, 1945; Rec. No. 3448375). Lewis J. Bailey and his wife Gertrude Bailey then in ownership of both tracts 26 and 27 deeded them to Harold G. and Josephine Dargitz. *Ex. B:5* (Fidelity Title: Rossi #18; March 10, 1964; Rec. No. 5708615). Harold G. and Josephine Dargitz then sold tracts 26 and 27 on a real estate contract to Alan N. and Judy C. Sjolander and to Jack A. and Margaret E. Dargitz in undivided one-half interests to each couple. *Ex. B:5* (Fidelity Title: Rossi #19; December 7, 1972; Rec. No. 7212070431). Then, the Dargitzes and Sjolanders deeded tract 26 and a portion of tract 27, the Rossi Property, to John M. Rossi and Carolyn S. Rossi. *Ex. I* (deed); *Ex. B:5* (Fidelity Title: Rossi #21; July 20, 1983; Rec. No. 8307200642). The legal description was:

> That portion of Government Lot 2 in Section 32, Township 25 North, Range 6 East, W.M., in King County, Washington, described as follows:
>
> Beginning at the intersection of the southerly line of said Government Lot with the westerly line of the right-of-way of the Northern Pacific Railway Company and running thence northerly along said westerly line 1238.29 feet to the true point of beginning; thence northerly along said westerly line 62 feet; thence North 52º 00' 00" West 43 feet; thence northeasterly at right angles 13 feet; thence North 52º 00' 00" West to the westerly line of said Government Lot; thence southerly along said westerly line to a point from

which the true point of beginning bears South 52º 00' 00" east; thence South 52º 00' 00" East 210 feet, more or less, to the true point of beginning.

Together with second class shorelands adjoining.

(Also known as Tract 26 and a portion of Tract 27, Willis J. Connell's Subdivision, according to the unrecorded plat thereof; together with second class shorelands adjoining.)

*Ex. I:2.* This legal description is consistent with the legal descriptions used in the conveyances from Connell forward.

16.   No deeds or other conveyances were located in which Willis J. Connell transferred to anyone else any interest in the railroad right of way adjacent to the Rossi Property after a search was made and after inquiries to title companies.

17.   In conclusion, the Rossi Property includes the land adjacent to the westerly line of the railroad right of way, specifically tract 26 of Connell's unrecorded plat. In regards to that land, John M. Rossi and Carolyn S. Rossi are the successors to the original private property owners, Jim and Alice Yonderpump, who granted the Right of Way Deed to Seattle Lake Shore & Eastern Railway after previously obtaining the United States Government land patent for Government Lot 2 of Section 32.   The portion of the Rossi Property in tract 27 is not adjacent to the right of way.

18.   **Brockway Property:** With respect to the Brockway Property, the Brockway ownership is of tract 16 and the south half of tract 17 of Connell's unrecorded plat.   Willis J. Connell deeded tract 16 and 17 separately and parcels came back into the same ownership prior to being deeded to the Brockways.   The tracts were again described based on the distance northerly along the westerly line

10

of the railroad right of way as shown on the unrecorded plat map.  *Ex. G.*

Regarding tract 16, Willis J. Connell deeded tract 16 to A. F. Ebken (and tract 15).

*Ex. C:3*  (Fidelity Title: Brockway #8; August 11, 1937; Rec. No. 2959705).

Regarding tract 17, Willis J. Connell deeded tract 17 to John J. and Margaret E.

Nelson (along with tracts 13, 18, and 21-23).  *Ex. C:4*  (Fidelity Title: Brockway #9;

January 27, 1940; Rec. No. 3083577).  The Nelsons then deeded tract 17 to A. F.

Ebken (along with tract 18).  *Ex. C:4*  (Fidelity Title: Brockway #10; August 3, 1942;

Rec. No. 3255917).  Thus, at that point in 1942, A. F. Ebken held tracts 15, 16, 17,

and 18.

19.  A. F. Ebken and his wife then deeded tract 16 and the south half of tract 17

to Forrest A. and Madeline Gyger in fulfillment of a real estate contract.  *Ex. C:4*

(Fidelity Title: Brockway #12; July 29, 1960; Rec. No. 5186608).  This property is

the same as the Brockway Property.  The Gygers then deeded the same property to

R.A. and N. Eloise Henning in fulfillment of a real estate contract.  *Ex. C:4*

(Fidelity Title: Brockway #15; February 8, 1972; Rec. No. 720208460).  The

Hennings deeded the Brockway Property to Reid E. Brockway and Susan M.

Brockway.  *Ex. J*  (deed) *Ex. C:4*  (Fidelity Title: Brockway #16; March 26, 1973;

Rec. No. 7303260236).  The legal description is as follows:

> BEGINNING AT THE INTERSECTION OF THE SOUTH LINE OF
> GOVERNMENT LOT 2, SECTION 32, TOWNSHIP 25 NORTH, RANGE 6 EAST,
> W.M., IN KING COUNTY, WASHINGTON, WITH THE WESTERLY LINE OF THE
> NORTHERN PACIFIC RAILWAY RIGHT-OF-WAY; THENCE ALONG SAID
> RIGHT OF WAY LINE NORTH 38º 00' EAST 738.29 FEET TO THE TRUE PLACE
> OF BEGINNING; THENCE NORTH 38º 00' EAST 75 FEET; THENCE NORTH 52º
> 00' WEST 225 FEET, MORE OR LESS, TO THE WESTERLY LINE OF SAID
> GOVERNMENT LOT 2; THENCE SOUTHWESTERLY ALONG SAID LOT LINE
> TO A POINT WHICH BEARS NORTH 52º 00' WEST FROM THE TRUE PLACE OF

11

BEGINNING; THENCE SOUTH 52º 00' EAST 220 FEET, MORE OR LESS TO THE PLACE OF BEGINNING.

(ALSO KNOWN AS TRACT 16 AND THE SOUTH HALF OF TRACT 17, WILLIS J. CONNELL'S SUBDIVISION, ACCORDING TO THE UNRECORDED PLAT THEREOF; SUBJECT TO A ROADWAY OVER THE SOUTHEASTERLY 15 FEET THEREOF; TOGETHER WITH SECOND CLASS SHORE LANDS RUNNING THEREON.)

This legal description is consistent with the legal descriptions used in the conveyances from Connell forward.

20.  No deeds or other conveyances were located in which Willis J. Connell transferred to anyone else any interest in the railroad right of way adjacent to the Brockway Property after a search was made and after inquiries to title companies.

21.  In conclusion, the Brockway Property includes the land adjacent to the westerly line of the railroad right of way, specifically tract 16 and the south half of tract 17 of Connell's unrecorded plat.  In regards to that land, Reid E. Brockway and Susan M. Brockway are the successors to the original private property owners, Jim and Alice Yonderpump, who granted the Right of Way Deed to Seattle Lake Shore & Eastern Railway after previously obtaining the United States Government land patent for Government Lot 2 of Section 32.

### CHAIN OF TITLE – DONNA MARIE RAAB MATRINEZ

22.  I investigated the chain of title for Donna Marie Raab Matrinez in relation to King County Parcel No. 322506-9241, 109 East Lake Sammamish Parkway SE, City of Sammamish, King County, Washington, and the adjacent right of way ("Matrinez Property").  Stephen J. Graddon was retained to prepare a chain of title for the Matrinez Property.  Mr. Graddon is a title expert with 30 years of experience

researching, analyzing, and reporting on title matters including specifically chain of title.  Numerous documents located by Mr. Graddon were included in the Joint Appendix. This Declaration relies in part of Mr. Graddon's work because he is a well-respected title researcher who is regularly and reasonably relied upon for these purposes.  Any recorded documents or copies thereof requiring further attention will be provided as separate Exhibits.  Additional research was done regarding certain probate records described herein

23.  The Matrinez Property is located in Section 32, Township 25 North, Range 6 East, W.M., specifically in Government Lot 3 <u>and</u> the Northeast Quarter of the Southwest Quarter of Section 32.[2]

24.  The Matrinez Property's chain of title begins with Bill Sbedzue who obtained a United States Government land patent.  *2 JA Tab 81* (February 3, 1883; King County records Vol. 27, Pg. 799).  The land described in the patent was: Government Lot 3 <u>and</u> the Northeast Quarter of the Southwest Quarter of Section 32, Township 25 North, Range 6 East, W.M.  Bill Sbedzue granted a right of way deed to Seattle Lake Shore & Eastern Railway.  *2 JA Tab 82* (May 6, 1887, Rec. No. 13452); *5 JA Tab 209* (transcription).

25.  The land, Lot 3 <u>and</u> the NE ¼ of the SW ¼ of Section 32, was granted to George R. Fischer in two transactions: Sbedzue to Fisher—2/3rds share, *2 JA Tab 84* (August 5, 1905, King County records Vol. 424, Pg. 502), and Sbedzue's children by

---

[2] A small portion of the Matrinez Property that is not adjacent to the right of way appears to be within Government Lot 2 of Section 32, and is not considered in this review of chain of title.

guardian of the estate to Fisher—1/3rd share. *2 JA Tab 85* (March 6, 1906, Rec. No. 339730).

26.    George R. Fischer deeded a portion of his land described above to Lotta M. Ebright. *2 JA Tab 86* (March 6, 1906, Rec. No. 420556). The land conveyed was the north 750 feet of the NE ¼ of the SW ¼ of Section 32, and a portion of Lot 3 described as the north 750 feet measured on the east line of Lot 3 and north of a point on the meander line starting 20 feet south of the south line of the north half of the NE ¼ of SW ¼ of said Section. This conveyance included the railroad right of way. Lotta M. Ebright quit claimed land to King County for a County Road in 1908. *2 JA Tab 87* (March 14, 1908; Rec. No. 544018).

27.    Lotta M. Ebright and her husband deeded three parcels of land (including land that became the Matrinez Property) to Charles Kuhnert. *Ex. K* (November 9, 1934, Rec. No. 2829540). The second parcel including the Matrinez Property was described as:

> That certain portion of the northeast quarter of southwest quarter and of government lot 3, section 32, township 25 north, range 6 east, W.M., described as follows:
>
> Beginning at the center of said section 32; thence west along the east and west center line of said section, 1346 feet, more or less, to a point in the meander line of said point, being the northwest corner of a tract of land conveyed to Lotta M. Ebright by deed recorded in Volume 513 of deeds, page 547, under auditor's file No. 420556, records of said county, and the true point of beginning of this description; thence east along said east and west center line to an intersection with the northwesterly line of the right of way of the Northern Pacific Railway Company; thence southwesterly along said northwesterly line 282.99 feet; thence northwesterly along a line at right angles to said right of way line to an intersection with the meander line; thence northeasterly along said meander line to the true point of beginning;

Ex. 3-14

Ex. K.  Thus, the described land is the area 282.99 feet along the westerly/ northwesterly line of the railroad right of way measured southwesterly from the east west centerline of Section 32 with the southern boundary being at a right angle to the right of way out to the meander line.

28.  Lotta M. Ebright died June 16, 1959, at approximately 93 years of age.[3] Probate records were obtained and reviewed for Lotta M. Ebright (King County Superior Court No. 154554).  The Inventory listed nine properties with properties Nos. 6, 7, 8, and 9 being in Section 32, but none of those described parcels included any part of the Matrinez Property, the railroad right of way adjacent to the Matrinez Property, or the land across the road from the Matrinez Property.  *Ex. QQQ* (August 27, 1959).  Property No. 9 is a parcel directly south of land described above that Lotta Ebright deeded to Kuhnert starting at the 282.99 foot point and further south.  An aerial photo of the area was obtained that was taken May 11, 1953 (Source: Quantum Spatial), and the Matrinez Property is shown in zoomed format.  *Ex. XXX*.

29.  Charles Kuhnert and his wife then deeded the above described land to Bruce Jennings.  *Ex. L* (June 23, 1936, Rec. No. 2904026).  Bruce Jennings' estate (Bessie H. Jennings executrix) then split the above described land.  Relevant to the Matrinez Property was a deed from Jennings to Francis I. Sprague and Hilda E. Sprague.  *2 JA Tab 89* (May 1, 1942, Rec. No. 3294450), for a sixty foot parcel,

---

[3] An interesting side note is that Lotta Ebright's son, Carroll Malcolm "Ky" Ebright, was a University of Washington coxswain and then became the legendary rowing coach at the University of California from 1923 to 1959 winning three Olympic gold medals.

namely the 60 feet from the point 162.99 feet to 222.99 feet southwesterly along the

westerly line of the right of way described as follows:

> That portion of government Lot 3, Section 32, Township 25 North, Range 6
> E., W.M., described as follows:
>
> Beginning at the intersection of the westerly line of the Northern Pacific
> Railway Company's right of way with the east and west center line of said
> section; thence along said right of way line south 38º 05'37" west a distance of
> 222.99 feet to the true place of beginning; thence along said right of way line
> south 38º 05'37" west a distance of 60 feet; thence north 51º54'23" west 190
> feet more or less to the westerly line of said Government lot; thence
> northeasterly along said lot line 60 feet more or less to a point which is north
> 51º54'23" west from the true place of beginning; thence south 51º54'23" east
> 190 feet more or less to the point of beginning; together with second class
> shore lands of Lake Sammamish fronting thereon.

*2 JA Tab 89.*  The north line of this parcel is at right angles to the right of way, and

encompasses a sliver of the land that became the Matrinez Property.

30.  The second relevant transaction by Bessie H. Jennings was inconsistent in

that she conveyed the entire 222.99 feet to Guy E. Peterman and Elizabeth

Peterman.  *Ex. M* (April 29, 1943, Rec.  No. 3308204).  But, the Petermans then

conveyed the entire 222.99 feet to Hilda E. Sprague.  *Ex. N* (February 27, 1947, Rec.

No. 3667723), thus resolving any inconsistency.[4]

31.  The Spragues obtained a survey of the entire land holding for the purpose of

describing three parcels with slightly different dimensions.  *Ex. O* (survey by Orland

L. Anderson, Professional Engineer and Land Surveyor, January 19, 1967).  The

entire land holding was shown as the 282.99 feet along the westerly line of the right

of way measured southwesterly from the east west centerline of said Section with

---

[4] Not relevant to the Matrinez Property, the Spragues also obtained the remainder of the original
282.99 feet owned by Jennings—the south 60 feet thereof.

the southern boundary being at a right angle to the right of way out to the meander line.  The north parcel of the survey, Parcel "A", is the Matrinez Property.  *Ex. O.*

32.  Hilda E. Sprague and Francis I. Sprague sold the Matrinez Property to George W. Raab and Mildred M. Raab on a real estate contract, and the contract was satisfied and a deed was recorded.  *2 JA Tab 88* (December 8, 1967, Rec. No. 6275852).  The parcel conveyed is the Matrinez Property and is the land measured 162.99 feet along the westerly line of the right of way and described as follows:

> That portion of government Lot 3 and the northeast quarter of the southwest quarter of Section 32, Township 25 North, Range 6 East, W.M., in King County, Washington described as follows: Beginning at the intersection of the westerly line of the Northern Pacific Railway Company's right-of-way with the east-west center line of said section; thence south 38º 05'37" west 282.99 feet; thence north 51º54'23" west 190 feet, more or less, to the westerly line of said government lot; thence northeasterly along said lot line to the northwest corner thereof; thence easterly along said lot line to the point of beginning.

> TOGETHER WITH second class shorelands of Lake Sammamish fronting thereon;

> EXCEPT that portion lying southwesterly of the following described line: Beginning at a point in the westerly margin of the Northern Pacific Railway Company's right-of-way, distant 162.99 feet measured along said westerly margin, from the east-west center line of said section as established by the unrecorded plat of Ebright's Sammamish Shores and Waterfront Tracts; thence north 56º31'01" west 186.60 feet; thence north 51º54'23" west to the outer limits of said second class shorelands.

*2 JA Tab 88*.  The southerly boundary of the Matrinez Property is not at a right angle to the right of way, but rather was adjusted to ensure 45 feet of waterfront for the Matrinez Property.  *See Ex. O* (Anderson survey).

33.  Donna Marie Raab Matrinez is the daughter of George W. Raab and Mildred M. Raab.  In 1992, Donna Marie Raab Matrinez took ownership as trustee of the

Matrinez Property from her parents via deeds first creating separate estates in each of her parents and then to her from each of her parents. *Ex. P* (December 22, 1992; Rec. Nos. 199212221555-1558).

34. No deeds or other conveyances were located in which Lotta M. Ebright transferred to anyone else any interest in the railroad right of way adjacent to the Matrinez Property after a search was made and after an inquiry to a title company.

35. In conclusion, the Matrinez Property includes the land adjacent to the westerly line of the railroad right of way measuring 162.99 feet southwesterly along that line from the east west center line of Section 32. In regards to that land, Donna Marie Raab Matrinez is the successor to the original private property owner Bill Sbedzue who granted the Right of Way Deed to Seattle Lake Shore & Eastern Railway after previously obtaining the United States Government land patent for: Government Lot 3 <u>and</u> Northeast Quarter of the Southwest Quarter of Section 32.

## CHAIN OF TITLE – CLIFFORD AND KATHRYN SCHROEDER

36. I investigated the chain of title for Clifford and Kathryn Schroeder in relation to King County Parcel No. 322506-9144, 477 East Lake Sammamish Parkway SE, City of Sammamish, King County, Washington, and the adjacent right of way ("Schroeder Property"). The portion of the Schroeder Property adjacent to the right of way is located in Section 32, Township 25 North, Range 6 East, W.M., and other portions of the Schroeder Property are located in Section 31, Township 25 North, Range 6 East, W.M., so the chain of title for the portion in Section 31 is relevant but not controlling as to the chain of title for the property adjacent to the

right of way.  Stephen J. Graddon was retained to prepare a chain of title for the Schroeder Property which was relied on in part.  Additional research was done regarding certain probate and other court records described herein

37.  The Schroeder Property's chain of title begins with Louie Tahalthkut. Tahalthkut finalized a homestead application in 1885.  *2 JA Tab 103:24161.* Tahalthkut granted a Right of Way Deed to Seattle Lake Shore & Eastern Railway. *2 JA Tab 104* (May 9, 1887; King County records Vol. 40, Pg. 302); *5 JA Tab 206* (transcription).  The Right of Way is based on a center line which location is discussed below.  Tahalthkut obtained a United States Government land patent based on the homestead application.  *2 JA Tab 106* (June 8, 1888; King County records Book of Deeds, Vol. 40, Pg. 302).  The land described in the patent was: Government Lot 4 <u>and</u> the Southeast Quarter of the Southwest Quarter of Section 32, Township 25 North, Range 6 East, W.M.  The land patent was reissued in 1907 in corrected form as fee simple with the same legal description. *2 JA Tab 103:24160, 24179, 24189-96* (May 9, 1907; King County records Vol. 164, Pg. 484).

38.  Mary Tahalthkut, the widowed wife of Louie Tahalthkut, deeded the patented land to T.N. Tallentire.  *2 JA Tab 110* (May 4, 1907; Rec. No. 485469). Tallentire quit claimed land to King County for a County Road in 1908.  *Ex. Q* (April 8, 1908; King County records Vol. 451, Pg. 541).

39.  Tallentire then deeded to Otto Johnson and Annie Johnson, but reserved six acres for himself.  *Ex. R* (February 5, 1909; Rec. No. 742042).  The legal description

Ex. 3-19

includes the land obtained from Tahalthkut plus Government Lot 2 in Section 31,

but then excepts the six acres retained by Tallentire:

> Lot two (2) in Section thirty-one (31) and lot four (4) and the southeast quarter of the southwest quarter both in Section thirty-two (32) all in Township twenty-five (25) north of Range six (6) east, W.M., except the following piece of land, to-wit:
> Beginning at a point between Section five and six, Township twenty-four north of Range six east, W.M. and Section thirty-one and thirty-two Township twenty-five north of Range six east, W.M., and runs Six hundred and twenty-four feet east; thence Four hundred and sixteen feet north; thence Six hundred and twenty-four feet west; thence Four hundred and sixteen feet south to the place of beginning being a part of lot four above described containing six acres more or less.

*Ex. R.* The excepted parcel containing six acres contains no part of the Schroeder

Property or the railroad right of way adjacent to the Schroeder Property.

40. Otto Johnson died in 1922. Probate records were obtained and reviewed for

Otto Johnson, King County Superior Court Probate Matter No. 43048 (1927). *Ex.* S.

Otto Johnson was survived by his widow Anna Johnson (then age 52), son Hans

Alfred Johnson (then age 27), daughter Irene Violet Johnson Brown (then age 25).

The Inventory property ownership is listed as follows:

> Lot Four except Railroad right of way, less South 416 feet of West 624 feet thereof, and less County road and shorelands adjoining, and Southeast quarter of Southwest quarter, all less North twenty acres, in Section 32, Township 25 North, Range 6 E, W.M.
>
> Also, Lot Two less South 100 feet and less Railroad and less County road and all shorelands adjoining said lot, in Section 31, Township 25 North, Range 6 E, W.M.

*Ex. S:*2 (Inventory; October 20, 1927). This land description indicates that the

Johnsons retained ownership of most of the land obtained from Tallentire, but had

deeded off two portions: (a) the south 100 feet of Lot 2 in Section 31, and; (b) the

Ex. 3-20

north 20 acres of the land owned in Section 32 (essentially the north 340 feet). There is no indication that the Johnsons had deeded off the railroad right of way within the area described, including adjacent to the Schroeder Property, but do appear to have deeded off the right of way within the north 20 acres (340 feet) of Government Lot 4, Section 32, and the south 100 feet of Government Lot 2, Section 31. The probate records show that son Hans and daughter Irene quit claimed the same legally described land to clear title in their mother. The land retained by Anna Johnson included the entirety of the Schroeder Property.

41. In 1956, when Anna Johnson was about 81 years old, her daughter Irene Violet Johnson, under her married name Irene V. Gladd, petitioned for guardianship of her mother due to incompetency. *Ex. T*:1 (King County Superior Court No. 142545 (October 16, 1956); Petition for Appointment of Guardian ["Irene V. Gladd is her daughter"]).

42. Irene V. Gladd, as guardian, sought and obtained permission to sell land owned by her mother, including a parcel that became the Schroeder Property. *Ex. U.* Hence, Irene V. Gladd as guardian for Anna Johnson deeded the land to William N. and Violet M. Williams in 1961. *Ex. V* (July 24, 1961; Rec. No. 5314194). The land deeded to Williams is the Schroeder Property. The Williams' deeded the same land to the Clifford F. Schroeder and Kathryn L. Schroeder in 1974. *2 JA Tab 111: 24292* (March 29, 1974; Rec. No. 7404170393). The Schroeder Property is described the same in the deed from Johnson to Williams and Williams to Schroeder (with some style changes) and the deed to Schroeder is as follows:

That portion of Government Lot 4, Section 32, and of Government Lot 2, Section 31, all in Township 25 North, Range 6 East, W.M., in King County, Washington, described as follows:

Beginning at a point which is 229.36 feet east and 834.91 feet north of the southwest corner of said Government Lot 4 and running southwesterly 66 feet along the northwesterly margin of the Northern Pacific Railroad right of way to the point of beginning; thence north 70º 28' 04" west to the shore of Lake Sammamish; thence southwesterly along said shoreline to a line which is parallel to and 250 southwesterly of said initial course of north 70º 28' 04" west; thence south 70º 28' 04" east along said parallel line to the northwesterly margin of the Northern Pacific Railroad right of way; thence northerly along said margin to the point of beginning; EXCEPT the northeasterly 100 feet thereof;

TOGETHER WITH second class shore lands adjoining; . . . .

2   *JA Tab 111: 24292.*

43. The Schroeders obtained a survey of their property in 2003 and the final survey was recorded in the King County records. *Ex. W* (April 2, 2003; Rec. No. 20030402900005). The survey referenced a call in the deed to the point: "229.36 feet east and 834.91 feet north of the southwest corner" of Government Lot 4. The survey shows that said point falls 26.1 feet northwesterly of the right of way centerline and not 50' from the constructed centerline—the normal right of way width. The survey references the 26.1 foot margin line as: "Railroad right of way as described in deeds from A. Johnson, et al." Hence, accordingly, the legal description above in calling to "to the northwesterly margin" of the right of way includes the area from 26.1 feet to 50 feet from the constructed centerline—the Schroeder deed encompasses almost 24 feet of the normal 100 foot right of way.

44. Irene V. Gladd inherited additional land from her mother who died in 1962. Of relevance to the Schroeder Property, Irene V. Gladd conveyed the land east of the County Road directly east of the Schroeder Property in two transactions with

each legal description using the east edge of the County Road as the boundary and including no part of the right of way adjacent to the Schroeder Property.  First, Gladd deeded land to Richard B. Hooper with the boundary as the "southeasterly line of the Issaquah-Redmond Road." *Ex. X* (January 21, 1964; Rec. No. 5689468). The land is an 80 foot wide strip east of the County Road and across the County Road from a portion of the Schroeder Property as shown by the hatched area in the diagram attached to the deed.  *Ex. X*:2  The land obtained by Hooper is currently King County Parcel No. 322506-9230.  Finally, Irene V. Gladd deeded land to Joy Ann Gladd Griswold with the boundary as the "east margin of East Sammamish Road S.E."[5]  *Ex. Y* (April 10, 1963; Rec. No. 6330596).  The land is along the east side of the County Road north of the land deeded to Hooper and across the County Road from the remainder of the Schroeder Property as shown by the hatched area in the diagram attached to the deed.  *Ex. Y*:2  The land obtained by Joy Ann Gladd Griswold is currently King County Parcel No. 322506-9249.

45.  Returning to the Tahalthkut Right of Way Deed to Seattle Lake Shore & Eastern Railway (*5 JA Tab 206*: transcription), the legal description in the Right of Way deed is not consistent with the right of way as constructed and operated.  In other words, the railway was not constructed along the centerline described in the deed.  The Right of Way Deed uses the following description:

> Such right of way strip to be fifty (50) feet in width on each side of the center line of the railway track as located across our said lands by the Engineer of said Railway Company, which Location is described as follows, to wit:
> Beginning at a point 410 feet west from S.W. corner of Sec 32, T. 25 N. R. 6 E.

[5] East Sammamish Road S.E. is the same road as the County Road, the Issaquah-Redmond Road, and now East Lake Sammamish Parkway.

Ex. 3-23

and running thence on a 1º curve to the right for 1300 feet, thence N. 36º 36'
E  215 feet to point on north boundary of Lot 4, said Sec. 32, 1320 feet north
and 350 east from S.W. corner of said Section 32.

*5 JA Tab 206*.  The described centerline is approximately 210 feet west of the
constructed centerline.  A diagram showing the deeded centerline with hatching
indicating the 100 foot right of way based thereon is submitted herewith.  *Ex. Z*.
The constructed centerline is about 200 feet west of the SW corner of Section 32,
while the Right of Way Deed description places the centerline 410 feet west of the
SW corner.  The deeded centerline is nearly parallel to the constructed centerline.
The southeasterly line of the deeded 100 foot right of way is about 100 feet west of
the northwesterly margin of the constructed 100 foot right of way.

46.  No deeds or other conveyances were located in which Anna Johnson or her
daughter Irene transferred to anyone else any interest in the railroad right of way
adjacent to the Schroeder Property after a search was made and after an inquiry to
a title company.

47.  In conclusion, the Schroeder Property includes the land adjacent to the west
line of the constructed railroad right of way measuring about 150 feet along that
line.  However, the Schroeder deed describes the parcel as extending to a margin of
the right of way that is 26.1 feet from the constructed centerline meaning that the
area 26.1 to 50 feet from the constructed centerline is within area described in the
Schroeder deed.  *2 JA Tab 111: 24292* and *Ex. W*.  The right of way adjacent to the
Schroeder Property is entirely within Lot 4 of Section 32.  In regards to that land,
Clifford and Kathryn Schroeder are the successors to the original private property

owner Louie Tahalthkut who obtained the United States Government land patent for Government Lot 4 of Section 32.  Although Tahalthkut granted the Right of Way Deed to Seattle Lake Shore & Eastern Railway, the railway was constructed in a location approximately 210 feet east of the center line of the right of way described in the Tahalthkut Right of Way Deed.  *Ex. Z.*  The Railroad abandoned the deeded right of way (which includes a small portion of the Schroeder Property), and no replacement deed was located for the right of way as constructed.

## CHAIN OF TITLE – NELSON AND HUGHES

48.  I investigated the chain of title for land in Government Lots 1 and 2 of Section 20, Township 25 North, Range 6 East, W.M., as follows.  I investigated the chain of title for Robert G. Nelson and Beth Nelson in relation King County Parcel No. 202506-9042 (house at 3123 East Lake Sammamish Parkway NE, Sammamish, 98074) and for William F. Hughes and Betty Mary Hughes (both now deceased) in relation to King County Parcel No. 202506-9085 (vacant).  These two parcels are located in Government Lot 2 of Section 20.  I also investigated the chain of title for William F. Hughes and Betty Mary Hughes in relation to land in Government Lot 1, including but not limited to King County Parcel No. 202506-9071 (vacant).[6]  Beth Nelson is the daughter of William F. Hughes and Betty Mary Hughes and is an heir of the estates of her father and mother.[7]  These parcels in Government Lot 2 (Parcels 9042 and 9085) and the land in Government Lot 1, including Parcel 9071, will jointly be referred to as the Nelson/Hughes Properties.  The review of the chain

---

[6] Parcel 9071 includes a small area within Government Lot 2, but that area is not adjacent to the railroad right of way except at a single point and is not material to the chain of title.

[7] The other heirs were Beth Nelson's siblings William J. Hughes, Charles Hughes, and Jill Barney.

of title for the Nelson/Hughes Properties was facilitated by available title reports. *1 JA Tab 15* (Chicago Title Insurance Company, Property History Guarantee, September 7, 2004); *Ex. AA* (Fidelity National Title Insurance Company, Chain of Title Guarantee, Schedule A, King County Parcel No. 202506-9042-02 [Beth Nelson Property], prepared for King County Water and Land Resources Division). Additional research was done regarding certain probate and other court records, as well as tax assessor records and State records all described herein.

49. The Nelson/Hughes Properties chain of title begins with Alfred Palmberg. Alfred Palmberg was the great grandfather to Beth Nelson and grandfather to William F. Hughes.[8] Palmberg homesteaded the land in 1884 and submitted a homestead application in 1886. *4 JA Tab 182*. Palmberg granted a Right of Way Deed to Seattle Lake Shore & Eastern Railway in 1887. *4 JA Tab 181* (June 13, 1887; Rec. No. 13877); *5 JA Tab 211* (transcription). Alfred Palmberg's deed to the railroad expressly reserved: "All riparian and water front rights on Lake Samamish [sic]...." *5 JA Tab 211*. Palmberg obtained a United States Government land patent based on the homestead application. 4 *JA Tab 182: 26156*, *1 JA Tab 15:10393* (October 9, 1890; Rec. No. 64308). The land described in the patent was Lots 1, 2, 3 and 4 and S.E. ¼ of N.W. ¼ of Section 20, Township 25 North, Range 6 East.

---

[8] It appears that these relationships are by marriage of Bertha Palmberg to Alfred Palmberg, since Bertha had by prior marriage a daughter later known as Gertie Gorman Hughes—the mother of William F. Hughes.

50.  Palmberg then conveyed to Alonzo Charles Stares a portion of land in Government Lots 2 and 3, in Section 20.  *1 JA Tab 12, 15:10395* (April 21, 1893; Rec. No. 113151).[9]  The property is described, in relevant part, as:

> Beginning at a point on the line between Lots 2 and 3 in Section 20 Tp. 25 N R. 6 E. W.M. 569 64/100 feet south of the N.W. corner of said Lot 3.  Thence West in said Lot 2, Two hundred and twenty one and 58/100 (221 58/100) feet; thence southwesterly along a line drawn at right angles to the center line of the Northern Pacific Railway Company (formerly Seattle Lake Shore Eastern Ry. Co.) Fifteen and 3/10 (15 3/10) feet to the Easterly Margin of the right of way of said Railway Company; thence Southeasterly along said right of way, two hundred forty and 4/100 (240 4/100) feet; thence East eighty seven (87) feet to the line between said Lots 2 and 3; thence East in said Lot 3, fifty five and 25/100 (55 25/100) feet; thence north two hundred (200) feet; thence west fifty five and 25/100 (55 25/100) feet to the pace of beginning, containing one (1) acre, Together with all riparian rights, as reserved from the aforesaid Railway Company, fronting upon and appurtenant to the land hereinbefore described.

*1 JA Tab 13* (same).  Thus, this Stares Tract was described as a parcel of about one acre that is south of the Nelson/Hughes Properties, which are at the northwest corner of Government Lot 2 and adjacent thereto in Government Lot 1.  See illustrative diagram of Government Lot 2 submitted herewith.  *Ex. BB.*

51.  Alfred Palmberg died in 1908 and his wife Bertha inherited his property.  Bertha Palmberg quit claimed a 60-foot wide strip of land to King County for a County Road in 1914, said strip was "easterly of and adjacent to the right of way" of the railroad over land she owned in Government Lots 1 and 2, thus subdividing the land west and east of the road.  *Ex. CC* (September 29, 1914; Rec. No. 956024).  Bertha Palmberg died in 1918.  Bertha's six children inherited her remaining property in a one-sixth undivided interest each; the children were Maude Palmberg, Mrs. Annie Stangroom, Bessie Zengel, Gertie Gorman, Bert Stares, and Alfred

---

[9] This deed may have been for a half interest.

Palmberg.  *Ex. DD:2* (King County Superior Court Probate No. 24456, Order

Approving Final Account and Distribution of Estate, October 30, 1919).  The

Distribution listed four parcels: (1) portion of Government Lot 1; (2) portion of

Government Lot 2 north of the Stares Tract; (3) portion of Government Lot 2 south

of the Stares Tract, and; (4) an undivided half interest in the Stares Tract.[10]  With

respect to the portion north of the "Stares Tract," the legal description follows the

north boundary of the Stares Tract and the specific 15.3 foot distance to the east

line of the railroad right of way and then "northwesterly along said right of way to

northwest corner of said lot."  This description assumes that the northwest corner of

Government Lot 2, *i.e.,* where it connects to the Lake, is at the east line of the

railroad right of way, thus locating the entire right of way within the submerged

portion of the Lake defined as the second class shorelands.  This assumption

conflicts with evidence that the shoreline of the Lake was further west.

52.  Alfred and Bertha Palmberg's son, Alfred W. Palmberg, sought to purchase

the second class shorelands adjacent to Government Lot 2 from the State of

Washington in 1928.  The second class shorelands are the submerged portion of the

lake waterward of the line of ordinary high water out to the line of navigability.

The sale of second class shorelands, public lands, was and is under the jurisdiction

of the Commissioner of Public Lands of the State of Washington and the

Department of Natural Resources (DNR) of which the Commission is the elected

head.  We obtained the records of DNR in relation to the 1928 transaction.  As part

---

[10] King County's 1914 map for constructing the County Road shows these same properties within
Government Lots 1 and 2, including the small area owned by Palmberg south of the Stares Tract.
*Ex.  RRR* (portion King County Engineer's Survey No. 1136 A, April 1914).

of that application, a title report was prepared and submitted to the State. *Ex. EE* (Lawyers and Realtors Title Insurance Company, July 19, 1928) (the "1928 Title Report"). The 1928 Title Report referenced two parcels. Parcel "A" is the Stares Tract. *See Ex. BB*. Parcel "B" is as follows: "All of Government Lot 2, EXCEPT portion described as Parcel "A" and except railroad right of way and except County roads." Thus, Parcel B was all the land in Government Lot 2 (except Stares Tract). The 1928 Title Report reflects that the owners of Parcel B were the six children as tenants in common. The 1928 Title Report also states the following:

> The records do not disclose the location of the railroad right of way with reference to the meander line or the high water line, however, the deed to the railroad company of the right of way expressly reserves all riparian and water front rights on Lake Sammamish.

*Ex. EE:2* . The 1928 Title Report confirmed that the six children owned all of Government Lot 2 to the edge of the Lake (except Stares Tract), but also questioned the precise location of the Lake shoreline. The DNR records also contained the Office of Commissioner of Public Lands Report of Engineer which stated:

> This application, together with App. No. 8710 covering the balance of the frontage bordering on said lot 2 [Stares Tract] has been given considerable study owing to the peculiar descriptions which have been used in describing the upland tracts. We have secured 3 maps from the Northern Pacific Railway Company and a plat from the Engineer of King County. These plats show the railway right of way and the county road right of way mentioned in the descriptions and also show that the line of high water is located outside of the west line of the Northern Pacific right of way, and also outside of the government meander line.

*Ex. EEE* (August 3, 1928); *see also Ex. FFF* (DNR Shoreland Activity Register, Government Lot 2, Section 20). The State recognized that uplands within Government Lot 2 were located west of the railroad right of way and that the legal

descriptions in the area were "peculiar," but in any event concluded that, regardless of legal descriptions used, the six children owned all of the uplands within Government Lot 2 (except Stares Tract). *Ex. EEE.*  King County road maps dated 1914 and 1930 both show land west of the railroad right of way—between the Lake and the right of way. *Ex. RRR* (portion King County Engineer's Survey No. 1136 A, 1914), *Ex. SSS* (portion King County Engineer's Survey No. 1136 B, August 25, 1930).  The State of Washington approved the conveyance of second class shorelands, but installment payments were made and full payment was not received until 1940 at which time the State executed a deed to the same six persons. *Ex. FF* (deed); 1 JA Tab 15:10393 (March 15, 1940; Rec. No. 3090903).  The deed conveys all second class shorelands: "In front of all of [government] lot 2, section 20, township 25 north, range 6 east, W.M., except the following described tract" and then describes Stares Tract, Parcel A, referenced in the 1928 Title Report.  Thus, the State of Washington in this deed recognized that the upland ownership of the six children was all of Government Lot 2 (except Stares Tract) all the way to the second class shorelands, including the servient fee ownership of any upland portion of the railroad right of way.

53.  **Partition Lawsuit.**  Just five years later, in 1945, the family had a dispute and a partition lawsuit was filed involving the six children.  Bert Stares filed a Complaint for partition on November 3, 1945, against the other family members and heirs.  *Ex. GG* (King County Superior Court No. 367315).  The Complaint described three parcels for partition.  Parcel "A" described the portion of

Government Lot 1 listed in the distribution from Bertha Palmberg's estate. Parcel "C" described the portion of Government Lot 2 south of the Stares Parcel (listed in the distribution from Bertha Palmberg's estate) together with second class shorelands; however, the land portion, but not the shorelands, was subsequently removed from the lawsuit. The Complaint described Parcel "B" as the land north of the Stares Tract as follows:

> Beginning at the Northeast corner of said Government Lot 2; thence South, along the East line thereof, 569.64 feet; thence West 221.58 feet; thence Southwesterly, at right angles to the right-of-way of the Northern Pacific Railway Company (formerly the Seattle and International Railway), 15.3 feet, to the Northeasterly line of said right-of-way; thence Northwesterly along said Northeasterly line, to the North line of said Government Lot 2; thence East, along said North line, to the point of beginning, *TOGETHER WITH second class shore lands adjoining*, EXCEPT County Road.

*Ex. GG:2* (emphasis added). This legal description is essentially the same as the probate distribution (*Ex. DD*) in following the north boundary of the Stares Tract and the specific 15.3 foot distance to the east/northeasterly line of the railroad right of way and then "Northwesterly along said Northeasterly line," but correctly adjusts the remainder to be "to the North line said Government Lot 2" instead of to the "northwest corner of said lot" wording used in the probate distribution. *Compare Ex. DD with Ex. GG*. This legal description adds the "second class shorelands adjoining" which would seem to be adjoining the northeasterly line of the railroad right of way, but the State had found that the second class shorelands were beyond the southwesterly margin of the railroad right of way. Hence, *in the context of this description*, the reference to "second class shorelands" was a shorthand reference describing the uplands southwesterly of the northeasterly line of the railroad right of way plus the submerged

31

lakebed out to the line of navigability. This area is shown in light grey on the attached illustrative diagram. *Ex. VVV* (Stares Tract is labeled Parcel A on this diagram).

54. In the Partition lawsuit in response to a demand for more information about parties with ownership interests, Gertie Gorman Hughes filed a Bill of Particulars with a title report dated November 19, 1946. *Ex. HH* (Washington Title Insurance Company, November 19, 1946) (the "1946 Title Report"). The 1946 Title Report examined the ownership of the same three parcels described in the Complaint accepting essentially the same legal descriptions, but labeled them (a), (b), and (c). Regarding Government Lot 2, the 1946 Title Report concluded that: parcel (b) except second class shorelands was vested in S. L. Stangroom and Anna B. Stangroom, his wife; parcel (c) except second class shorelands was vested in H. N. Coury, and; the second class shorelands adjoining parcels (b) and (c) were vested as one-sixth interests in each of the following: heirs of Alfred Palmberg (Bertha's son), heirs of Bessie Zengel, Maude Palmberg, Annie Stangroom, Gertie Gorman, and Bert Stares. *Ex. HH:3.* Parcel (b) vested in Stangroom was described as:

> Beginning at the northeast corner of said Government Lot 2; thence south along the east line thereof, 569.64 feet; thence west 221.58 feet; thence southwesterly at right angles to the right of way of the Northern Pacific Railway Company (formerly the Seattle and International Railway) 15.3 feet to the northeasterly line of said right of way; thence northwesterly along said northeasterly line to the north line of said Government Lot 2; thence east along said north line [to] the point of beginning;
> EXCEPT County Road;
> TOGETHER with second class shore lands adjoining, EXCEPT portion if any, in said railroad right of way.

*Ex. HH:2.*

55.  The 1946 Title Report at Items #5 and #6 detailed the family history leading to the six vested interests.  *Ex. HH:3-4.*  Namely, Alfred Palmberg died in 1908 and his wife Bertha died in 1918.  It appears that when Bertha married Alfred she already had three children (Elizabeth "Bessie" Zengel, Gertie Gorman, and Bert Stares) and that Bertha had three additional children with Alfred Palmberg (Elizabeth E. "Maude" Palmberg, Anna B. Stangroom nee Palmberg, and Alfred W. Palmberg).  The Report confirms that Bertha Palmberg's six children inherited Parcels (a), (b), and (c) (except second class shorelands).

56.  Trial in the Partition lawsuit was held and Findings of Fact and Conclusions of Law were entered on January 21, 1949, along with a recorded Decree.  *Ex. II.* The Court set forth legal descriptions for Parcels A, B, and C.  Parcels A and B were unchanged from the 1946 Title Report (which referenced those parcels as (a) and (b) respectively).  Parcel C was changed from parcel (c) in the 1946 Title Report to describe only the second class shorelands adjoining land south of the Stares Tract in Government Lot 2.  *Ex. II*:2.  The Court found that Annie Stangroom and her husband S. L. Stangroom owned Parcel B as described in the 1948 Title Report except not the adjoining shorelands, *i.e.,* Stangroom owned the area east of the northeasterly line of the right of way north of the Stares Tract, and that Stangroom had acquired that land for themselves and not as a redemption or trust for anyone else when they purchased the property after a tax foreclosure caused when Bert

Ex. 3-33

Stares failed to pay the taxes. *Id.* at 4 (Finding V), at 5 (Findings VIII).[11]  The Court also determined that partition in kind was unfair and ordered sale by referee of three parcels: Parcel A, second class shorelands adjoining Parcel B, and the second class shorelands described in Parcel C. *Ex. II:7-8.*

57. The Referee's Return of Sale explains that he waited for the weather to improve before holding the sale on April 30, 1949, that he followed a careful bidding process (separate parcels, pairs, all three parcels), and that J. J. Simpson was the winning bidder for Parcel A at $7,500 and that J. A. Earley was the winning bidder of Parcels B (shorelands only) and C combined at $6,600. *Ex. JJ* (May 14, 1949).[12]  The Court confirmed the Referee's Sale *Ex. JJ:6-7* (May 20, 1949).

58. **Hughes/Nelson - Government Lot 2:** The Referee's Corrected Deed to J. A. Earley was subsequently recorded. *Ex. KK (deed); 1 JA Tab 15:10394* (August 16, 1949; Rec. No. 3929069).  The Corrected Deed described: "All shore lands of the second class formerly owned by the State of Washington situated in front of, adjacent to or abutting government lot 2 . . . except the shore lands in front of the following [the Stares Tract]."  The Referee petitioned the Court for the Corrected Deed due to potential ambiguity in the original Referee's Deed which used the legal description from the 1946 Title Report. *Ex. GGG* (original deed, June 17, 1949, Rec. No. 3911320), *Ex. HHH* (Petition for Corrected Deed, August 12, 1949).

---

[11] Stangroom's estate later deeded the same described land to Byco, Inc., who subdivided the land using the easterly edge of the County Road as the boundary of the lots.  Ex. ZZZ (Deed, June 2, 1978; Rec. No. 7806020048: Short Plat No. R1277118; January 10, 1979; Rec. No. 7901100957).

[12] Compare the $6,600 paid by Earley for so called "shorelands" with the price paid to the State for the actual second class shorelands which was $395.25 or $25 per chain for the 15.81 chain length of shoreline. *Ex. FF.*  Earley paid $421.25 per chain.  Two years later in 1951, Gertie Gorman Hughes paid $50 per chain for her second class shorelands.  *Ex. VV.*

59. Historically, the County Tax Assessor maintained map books showing tax parcels.[13] The Tax Assessor map book for Government Lot 2 around 1950 is submitted herewith in two pages north to south. *Ex. III.* The map book shows the land east of the road owned by S. L. Stangroom. *1 JA Tab 15:10396.* The map book shows the Lake shoreline westerly of the edge of the railroad right of way. *Ex. III.* In other words, uplands are shown between the Lake and the railroad right of way as described by the State in the Office of Commissioner of Public Lands Report of Engineer. *Ex. EEE.* The map book shows that the Stares Tract was owned by Gordon Barrett and shows an arrow with line to another arrow connecting the land east of the road with uplands west of the railroad right of way—uplands between the Lake and the right of way. *Ex. III.* The arrow connector was used by the Tax Assessor to indicate common ownership and a single tax parcel. No similar arrow connector links the Stangroom land with the uplands west of the railroad right of way indicating separate ownership and separate tax parcels. Structures are indicated on the uplands west of the railroad right of way. *Ex. III.*

60. The Tax Assessor map book for Government Lot 2 in or around the late 1950s is submitted herewith in two pages north to south. *Ex. JJJ.* This map book is different because adjacent to the Stangroom parcel a circle is added in the Lake with number 30, which indicated the tax parcel number, with a notation "shorelands only." The "shorelands only" notation is not provided at the Stares Tract, but the arrow connector at the Stares Tract still shows a combination with

---

[13] Given the complexities of legal descriptions and transactions, these map books cannot be relied on as perfectly representing all information, but can be relied on as a potential source of relevant information.

land east of the road. The lack of an arrow connecting the Stangroom land east of the Road to the uplands west of the railroad right of way indicates no common ownership.

61. Rose A. Earley was the widow of J.A. Earley. She sold property via a real estate contract to William F. and Betty M. Hughes. *Ex. LL* (April 19, 1962; Rec. No. 5415002). Upon payoff, the Statutory Warranty Deed, *i.e.*, fulfillment deed, was recorded. *Ex. MM* (July 12, 1976; Rec. No. 7607120476). The Real Estate Contract and Deed used the following legal description:

> The northwesterly 200 feet of the Second Class Shorelands adjoining that portion of Government Lot 2 . . . described as follows:
> Beginning at the northeast corner of said Government Lot; thence south along the east line thereof, 569.64 feet; thence west 221.58 feet; thence southwesterly at right angles to the right of way of the Northern Pacific Railway Company (formerly the Seattle & International Railway) 15.3 feet to the northeasterly line of said right of way; thence northwesterly along said northeasterly line to the north line of said Government Lot; thence east along said north line to the point of beginning;
> EXCEPT County road;
> EXCEPT portion if any, in said railroad right of way.

*Ex. MM*. Thus, the shorelands are described as adjoining a certain parcel of land that uses the same description as the Stangroom land—Parcel B in the Partition lawsuit (except shorelands). The reference to "northwesterly 200 feet" means the land at the northwest corner of Government Lot 2 measured southerly along the westerly line of the railroad right of way from the north line of Lot 2, which was typical for other deeds along the shore. *See Ex. BB* (diagram). The referenced "northwesterly 200 feet" of so called "shorelands" is described as "adjoining" the northeasterly line of the railroad right of way. The description follows the

36

previously used shorthand "shorelands" to refer to the uplands westerly of the northwesterly line of the railroad right of way plus the adjoining submerged lakebed. This legal description encompasses both the Nelsons' former house at Parcel 9042 (96 feet) and Parcel 9085 (104 feet). *See Ex. BB* (diagram).

62. The Hughes' then sold the same property to their daughter Mary Beth Nelson[14] and her husband Robert G. Nelson via a real estate contract. *1 JA Tab 3* (June 17, 1977; Rec. No. 7706170837). The Nelsons finalized the purchase for only the southwesterly 96 feet of the 200 feet, *i.e.,* Parcel 9042, via Partial Warranty Fulfillment Deed. *1 JA Tab 2* (October 12, 1977; Rec. No. 7710120289). The legal description simply adjusted the introductory paragraph to state: "The Southwesterly 96.00 feet of Northwesterly 200 feet of the Second Class Shorelands adjoining . . . ." This property, the southwesterly 96 feet of the northwesterly 200 feet, became the property with the Nelson's house at 3123 East Lake Sammamish Parkway NE, Sammamish, 98074, Parcel 9042. The remainder of the land, the northwesterly 200 feet less the southwesterly 96 feet, became Parcel 9085 (vacant) and remained in the ownership of William F. and Betty Mary Hughes. *See* diagram *Ex. BB*. There were no other transactions related to Parcel 9042 and Parcel 9085 prior to September 1998.

63. Regarding these two parcels, Parcel 9042 and Parcel 9085, the King County Tax Assessor records describe the land ownership within each parcel as including the uplands adjoining the described shorelands by reference to the herein highlighted "& UPLANDS ADJ." Parcel 9042 is as follows:

---

[14] Plaintiff Beth Nelson.

SELY 96 FT OF NWLY 200 FT OF 2ND CL SH LDS *& UPLANDS ADJ* THAT POR GL 2 IN SEC 20-25-06 DAF BEG NE COR SD GL TH S ALG E LN THOF 569.64 FT TH W 221.58 FT TH SWLY AT R/A TO R/W NPRR 15.3 FT TO NELY LN SD R/W TH NWLY ALG SD NELY LN TO N LN SD GL TH E ALG SD N LN TO POB LESS CO RD & LESS POR IF ANY IN OR NELY OF SD RR R/W

*Ex. NN* (emphasis added).  Parcel 9085 is as follows:

NWLY 200 FT OF 2ND CL SH LDS *& UPLANDS ADJ* THAT POR GL 2 IN SEC 20-25-06 DAF BEG NE COR SD GL TH S ALG E LN THOF 569.64 FT TH W 221.58 FT TH SWLY AT R/A TO R/W NPRR 15.3 FT TO NELY LN SD R/W TH NWLY ALG SD NELY LN TO N LN SD GL TH E ALG SD N LN TO POB LESS CO RD & LESS POR IF ANY IN OR NELY OF SD RR R/W LESS SELY 96 FT THOF

*Ex. OO* (emphasis added).  The King County Tax Assessor changed the legal descriptions for these waterfront parcels to conform to the reality on the ground in about 1981.  The Tax Assessor's tax roll in 1980 lists Parcel No. 202506-9085 with "Hughes, William F" as the taxpayer.  *Ex. TTT*.  The legal description uses three lines explained as follows: northwesterly 200 feet of second class shorelands fronting north 569.64 feet of Government Lot 2 less southeasterly 96 feet thereof.  *Ex. TTT:1*.  Then, in 1981, the Tax Assessor's tax roll for 1981 uses the quoted wording above (*Ex. OO*) including "UPLANDS ADJ."  *Ex.TTT:2*.  The same change was made for Parcel 9042—taxpayer "Nelson, Robert G."  *Ex. UUU:1-2*.  Thus, although the deeds may not precisely use the best legal description, the County Tax Assessor is clear that the parcel boundaries include uplands adjoining the described shorelands.

64.  Apparently, William F. Hughes noticed the change in his tax notice and contacted attorney S. Michael Rodgers who made an inquiry to the King County Tax Assessor about the changed legal description for Parcel 9085 and received a reply correspondence dated June 10, 1982.  *Ex.  PP* (June 10, 1982).  The letter from

38

the Tax Assessor referred to a map update in which the Tax Assessor "discovered that the dry beach area between the present location of the shore of Lake Sammamish and the railroad right-of-way was unaccounted for from an assessment standpoint." *Ex. PP.* The Assessor's letter goes on to explain that the property description was flawed in referring to shore lands adjoining a tract of land that ended at the easterly line of the railroad right of way since, after subtracting the right of way, there "is still an unassessed 50 to 55 foot strip that appears to be above the high water line of the lake." *Ex. PP.* Finally, the letter concludes that, "judging from similar descriptions in the area," it was determined that: "the shore line and the railroad right-of-way *was assumed* to be the same during the early years of property development along the shore of the lake." *Ex. PP* (emphasis added.) In other words, the Assessor was saying that the assumption was wrong— the shore line was at least 50 feet west of the railroad right of way. Thus, the letter confirms that the Assessor determined that, *regardless of the deed legal description*, the County tax parcels included the dryland between the railroad right of way and the Lake, *i.e.,* uplands, along with the adjoining second class shorelands.

65. As explained above, the Tax Assessor map books had referenced parcels on the Lake side of the railroad right of way as "shorelands only" (*Ex. JJJ*), but the reality on the ground was that there was dryland between the railroad right of way and the waterfront was being improved with homes and recreational amenities. The Tax Assessor map book for Government Lots 1 and 2 with information related to the 1970s through around 1990 is submitted herewith. *Ex. KKK.* This map book

implements the change described in the Assessor's letter by removing the notation "shorelands only." The map book also labeled the waterfront lots with a circled parcel number on the upland area between the shoreline and the westerly line of the railroad right of way, including "42" for Parcel 9042—the original 200 foot parcel deeded to Hughes.

66. No deeds or other conveyances were located in which Alfred or Bertha Palmberg, their children, or any other party transferred to anyone else any interest in the railroad right of way adjacent to the Nelson/Hughes Property in Government Lot 2 after a search was made and after inquiries to title companies.

67. In conclusion, with respect to Government Lot 2, Parcel 9042 (Nelson) and Parcel 9085 (Hughes) included the uplands between the line of ordinary high water and the northeasterly line of the railroad right of way, *i.e.,* the entire right of way, since the Stangroom deed ended at that line. *Ex. VVV.* Parcel 9042 extends 96 feet and Parcel 9085 extends 104 feet measured along the southwesterly margin of the railroad right of way. *Ex. BB* (diagram). In regards to the uplands, Nelson/Hughes are the successors to the original private property owner, Alfred Palmberg, who granted the Right of Way Deed to Seattle Lake Shore & Eastern Railway after previously obtaining the United States Government land patent for all of Government Lot 2 of Section 20. The Chain of Title Guarantee by Fidelity National Title Insurance Company for Parcel 9042 agrees that the chain of title for that parcel flows from Alfred Palmberg's patent. *Ex. AA.*

68. **Hughes - Government Lot 1:** Turning to Government Lot 1, the Referee's Deed to J. J. Simpson describes the property as:

> That portion of Government Lot 1, Section 20, Township 25 North, Range 6 E. W.M., King County, Washington, described as follows: Beginning at a point on the north line of said Government Lot 1, 630 feet east of the northwest corner thereof; thence south 900 feet; thence southwesterly at right angles to the right-of-way of the Northern Pacific Railway Company (formerly Seattle and International Railway) to the northeasterly line of said right of way; thence southeasterly along said northeasterly line to the south line of said Government Lot 1; thence east along said south line to the southeast corner thereof; thence north along the east line thereof to the northeast corner thereof; thence west along the  north line to point of beginning;  EXCEPT County Road.

*Ex. QQ* (dated June 8, 1949; Rec. No. 3912221).

69. J. J. Simpson, a widower, as grantor, then sold the same property to Gertie Gorman Hughes, a widow, by a real estate contract (July 1, 1949) which was paid off and a deed recorded completing the transfer to Gertie Gorman Hughes. *Ex. RR* (November 23, 1962; Rec. No. 5510169).

70. In about 1949 or 1950, Gertie Gorman Hughes sought to acquire the second class shorelands adjoining the property she acquired from J. J. Simpson.  However, J. J. Simpson was still holding the title to the uplands because the real estate contract had yet to be paid off.  We obtained the records of DNR in relation to this transaction.  With respect to purchasing second class shorelands, the adjacent upland owner has a preference right to purchase the adjoining second class shorelands.  J. J. Simpson and Gertie Gorman Hughes submitted an affidavit in which that J. J. Simpson waived his preference right in favor of Gertie Gorman Hughes who was purchasing the adjacent upland property on the real estate

41

contract. *Ex. TT* (July 28, 1950). However, the Commissioner of Public Lands

determined that under these facts Gertie Gorman Hughes was entitled to the

preference right as the abutting owner of the uplands. *Ex. UU* (Order, July 30,

1951). The State deeded the shorelands to Gertie Gorman Hughes. *Ex. VV*

(September 19, 1951, Rec. No. 4185298). The deed legal description expresses the

State's understanding of the upland property owned by Gertie Gorman Hughes:

> The shore lands of the second class, owned by the State of Washington,
> situate in front of, adjacent to, or abutting upon that portion of [Government]
> Lot 1, Section 20, Township 25 North, Range 6 East, W.M., lying
> southeasterly of a line running S 45º 35' W from a point in said Lot 1 which is
> East 630 feet and South 900 feet from the northwest corner thereof, with a
> frontage of 4.04 lineal chains, more or less.

*Ex. VV.* This legal description describes shorelands adjoining all the land in

Government Lot 1 southeasterly of the described line, which description includes

the servient fee ownership in the railroad right of way all the way to the Lake and

the beginning of the second class shorelands. *Ex. JJJ.*

71. Gertie Gorman Hughes subdivided her land easterly of the road creating a

triangle parcel with a house and the remainder as a separate parcel by deeding the

triangle parcel to her son William F. Hughes. *Ex. SS* (April 11, 1956; Rec. No.

4684707); *Ex. JJJ (*parcel shown in map book*).* The second class shorelands were

also a separate tax parcel. *Ex. JJJ* ("shorelands only"). In 1966, Gertie Gorman

Hughes deeded a majority of the land and the second class shorelands to her son

and daughter in law, William F. Hughes and Betty Mary Hughes. *Ex. WW* (June

14, 1966; Rec. No. 6041744). The deed used the same description as the deed from

Simpson, except that a rectangular portion adjacent to road is reserved as follows:

LESS the following described portion thereof:

That portion of Government Lot 1 . . . described as follows: Beginning at the intersection of the northeasterly margin of the Issaquah-Redmond County Road with the south line of said government lot; thence north 44º 21' 30" west along said margin 265.61 feet to the true point of beginning; thence north 45º38'30" east 337.19 feet; thence south 44º21'30" east 117.22 feet; thence south 45º38'30" west 337.19 feet; thence north 44º21'30" west 117.22 feet to the true point of beginning, and EXCEPT County road.

*Ex. WW.* All of the second class shorelands are included in this deed as follows:

TOGETHER WITH the second class shorelands conveyed to the above named grantor from the State of Washington by deed dated September 19, 1951, and recorded in Volume 3098 of Deeds at Page 491 under King County Auditor's Receiving No. 4185298.

*Ex. WW.*[15] By deeding land together with adjoining shorelands, the 1966 deed to William F. Hughes and Betty Mary Hughes deeded all the uplands southwest of the County Road, including the servient interest in the railroad right of way.

72. In 1978, Gertie Gorman Hughes deeded the retained rectangular parcel to her grandson and granddaughter in law, William John Hughes and Peggy Anne Hughes. *Ex. XX* (March 21, 1978; Rec. No. 7803210158). The parcel lines at the beginning of 1987 were reflected on a survey which also references ownership of the second class shorelands (with the rectangular parcel and triangular parcels each shown as "Exception." *Ex. YY* (March 5, 1987; Rec. No. 8703059047).

73. William J. and Peggy Anne sought to widen their parcel, so William J.'s parents, William F. Hughes and Betty Mary Hughes, deeded them a 30 foot strip on the southeasterly side of the rectangle. *Ex. ZZ* (December 8, 1987; Rec. No. 8712080416).

---

[15] The description re-deeded land already deeded to William F. Hughes in 1956, the triangle (*Ex. SS*), but the 1966 deed cleared title since Gertie Gorman Hughes did not receive the Fulfillment Deed until 1962.

74.  Then, in 1988, the Hughes parents and Hughes son/daughter in law implemented a lot line adjustment which was approved by King County (Recording No. 198809220933) and the new configuration of the three parcels was shown on a 1988 survey as parcels A, B, and C.  *Ex. AAA* (October 11, 1987; Rec. No. 8810119003); *see also Ex. KKK*.  The reconfiguration of the parcels required implementing deeds. William J. Hughes and Peggy Anne Hughes owned Parcel C and were deeded land from William J.'s parents to enlarge their parcel on the northeast.  *Ex. BBB* (September 22, 1988; Rec. No. 8809220934).  William F. Hughes and Betty Mary Hughes also recorded a deed to clear title on the new lot configuration and create an access and utility easement for Parcel A.  *Ex. CCC* (September 22, 1988; Rec. No. 8809220935).

75.  Then, in 1989, William F. Hughes and Betty Mary Hughes, deeded Parcel B as referenced in the 1988 survey (*Ex. AAA)* to the Kao Family Partnership.  *Ex. DDD:6* (May 24, 1989; Rec. No. 198905261614).  The deed to Kao Family Partnership included no second class shorelands and used the following legal description:

> THAT PORTION OF GOVERNMENT LOT 1, SECTION 20, TOWNSHIP 25 NORTH, RANGE 6 EAST W.M., DESCRIBED AS FOLLOWS:
>
> BEGINNING AT THE NORTH LINE OF GOVERNMENT LOT 1, 630 FEET EAST OF THE NORTHWEST CORNER OF SAID GOVERNMENT LOT 1; THENCE SOUTH 900 FEET; THENCE SOUTHWESTERLY, AT RIGHT ANGLES TO THE RIGHT-OF-WAY OF THE BURLINGTON NORTHERN RAILROAD COMPANY, FORMERLY SEATTLE AND INTERNATIONAL RAILWAY, AS CONVEYED BY INSTRUMENT RECORDED UNDER RECORDING NO. 13877, TO THE NORTHEASTERLY LINE OF THE ISSAQUAH-REDMOND ROAD, AS CONVEYED TO KING COUNTY BY INSTRUMENT RECORDED UNDER RECORDING NO. 956024; THENCE SOUTHEASTERLY ALONG THE NORTHEASTERLY LINE OF SAID ROAD, TO THE SOUTH LINE OF SAID GOVERNMENT LOT 1; THENCE EAST, ALONG SAID SOUTH LINE, 688.63 FEET, MORE OR LESS, TO THE SOUTHEAST CORNER OF SAID GOVERNMENT LOT 1;

THENCE NORTH, ALONG THE EAST LINE OF SAID GOVERNMENT LOT 1, 1325.52 FEET, MORE OR LESS, TO THE NORTHEAST CORNER OF SAID GOVERNMENT LOT 1;
THENCE WEST, ALONG SAID NORTH LINE OF SAID GOVERNMENT LOT 1, 724.45 FEET, MORE OR LESS, TO THE POINT OF BEGINNING;

EXCEPT THAT PORTION LYING SOUTH OF THE FOLLOWING DESCRIBED LINE:

[remainder describes the southeasterly line of Parcel B of the 1988 survey].

*Ex. DDD:6.*  After the transfer to the Kao Family Partnership, William F. Hughes and Betty Mary Hughes owned the uplands shown as light grey on the attached illustrative diagram, including the railroad right of way, together with the second class shorelands adjacent.  *Ex. NNN.*

76.  No other relevant transactions occurred prior to September 1998.

77.  Regarding the waterfront parcel, Parcel 9071, the King County Tax Assessor treated Parcel 9071 differently than the Hughes/Nelson parcels in Government Lot 2 (Parcels 9042 and 9085).  The tax rolls reflect that from at least 1980 the Tax Assessor described uplands measuring 171 feet in width with adjoining shorelands.  *Ex. WWW.* The Tax Assessor legal description in 1980 was:

POR GL 1 & 2 BEG NXN S LN GL 1 & SWLY MGN RR R/W TH NLY ALG SD SWLY MGN 171.06 FT TH S 45-38-30 W TO SH LN TH SELY ALG SH LN TO PT S 45-35-30 W FR BEG TH N 45-38-30 E TO BEG & SH LDS ADJ ON SW

*Ex. WWW:1* (Legal Description).  This legal description encompasses the uplands shown as light grey on the diagram submitted herewith (*Ex. MMM*), and the last words in the just quoted portion can be read as: "And [second class] shore lands adjoining on southwest."  *Ex. WWW:1.*  Then, in 1986, the Tax Assessor's changed the description in the tax rolls to reference uplands southwesterly of the railroad right of way between two lines:

PORS GLS 1 & 2 IN SEC 20-25-6 LY SWLY OF NPRR R/W & LY NWLY OF LN
DAF - BEG NXN S LN SD GL 1 & SWLY LN SD RR R/W TH S 45-38-30 W TO
SH LN & TERM THIS LN DESC LESS ANY POR SD GL 1 LY NWLY OF
SWLY PROD OF LN DAF-BAAP 630 FT E & 684 FT S OF NW COR SD GL 1
TH S 216 FT TH S 45-35 W 282 FT TO NELY MGN OF CO RD & TERM THIS
LN DESC TGW POR SH LDS ADJ LY BETWN SELY & NWLY LNS THOF

*Ex. WWW:2* (Legal Description).  This legal description encompasses the uplands shown

as light grey on this diagram (*Ex. MMM*), and then the last line of the just quoted

portion can be read as: "Together with portion of [second class] shorelands adjoining

lying between the southeasterly and northwesterly lines thereof [in the description]."

The 1986 legal description is still used today.  *Ex. LLL* (current tax assessor record).

The older map book called out Parcel 9071 as "shorelands only" (*Ex. JJJ*), but the newer

map book removes that notation and adds the circled "71" for Parcel 9071 on the

uplands.  *Ex. KKK*.

78.  As explained above, Gertie Gorman Hughes deeded her interest in the railroad

right of way to William F. Hughes and Betty Mary Hughes in the 1966 deed.  *Ex. SS*.

No deeds or other conveyances were located in which Alfred or Bertha Palmberg, J. J.

Simpson, or Gertie Gorman Hughes transferred to anyone else any interest in the

railroad right of way adjacent to the Hughes Property in Government Lot 1 after a

search was made and after inquiries to title companies.

79.  In conclusion, with respect to Government Lot 1, William F. Hughes and Betty

Mary Hughes in September 1998 retained ownership of all of the uplands shown as

light grey on the diagram provided herewith, including the railroad right of way (*Ex.

NNN),* plus the adjacent second class shorelands.  In regards to those uplands (not the

shorelands), William F. Hughes and Betty Mary Hughes are the successors to the

original private property owner, Alfred Palmberg, who granted the Right of Way Deed to Seattle Lake Shore & Eastern Railway after previously obtaining the United States Government land patent for all of Government Lot 1 of Section 20.

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct and was executed by me this 2nd day of February, 2018, at Bellevue, Washington.

Charles A. Klinge

47