## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WARREN BERES, et al., ) | Nos. 03-785L, 04-1456L, 04-1457L, 04-1458L, 04-1459L, 04-1463L, 04-1465L, 04-1466L, 04-1467L, 04-1468L, 04-1469L, 04-1471L, 04-1472L, 04-1473L, 04-1474L |
| Plaintiffs, ) | |
| v. ) | |
| THE UNITED STATES OF AMERICA, ) | **Honorable Marian Blank Horn** |
| Defendant. ) | |

### DECLARATION OF MIKE COLLINS

1. I am a Plaintiff in *Collins v. United States,* case no. 04-1472L, consolidated with *Beres v. United States,* case no. 03-785L. My wife, Vanessa Collins, and I, David M Collins ("Mike Collins") own property in Lake Sammamish that are the subject of dispute in this partial summary judgment proceeding. That property is identified by the King County Assessor as Tax Lot# 202506-9028 ("Lot 9028"). We also have ownership interest in two lots immediately north of Lot 9028 - Tax Lot# 202506-9113 ("Lot 9113"), and a 1/14 share in a community beach tract, Tract #202506 ("Beach Tract"), which is flanked by the first two properties, above. These two properties are no longer in dispute as to title ownership of the right of way. But our use and treatment of the right of way on Lot 9028 were intertwined with usage on the two adjacent parcels to the north and so occasional reference is made to them as well. We purchased Lot 9028 from the Estate of Zella F. Short on September 26, 1989. *See* Ex. 13, if 17 (Orrico Deel) (and Lot 9113 from Gordon Barrett, Jr. in 1993, which deed also included the right of way on Lot 9113 and on the Beach Tract.)

2. The attached depicts the three properties and visually depicts the footprint of the matters described, below. *See* Ex. A (Diagrams and Aerials Showing Collins' Properties). On the Diagram of Page 1 of Ex. A, I describe matters pertaining to uses and activities between 1983 and 1988. I will refer to that Diagram as Diagram I. On Page 2, f describe matters pertaining to

uses and activities beginning in 1989. I will refer to that as Diagram 2. As can be seen, each Diagram outlines areas identified by letters. Below, I refer to those areas as "Area A," "Area B," and so on.

    3. The adjacent properties and beach tract were owned by my family and family friends, including Mary Barrett and Gordon Barrett, Sr., my great aunt and great uncle; Elizabeth Barrett, my aunt; Don Barrett, my uncle (who owns property to the north of us and which is part of this takings case); Gordon Barrett, Jr., my uncle (from whom we bought Lot 9113, including the right of way); June Opal Barrett Michaels, my aunt; and Zella Short, a close family friend (from whom we purchased Lot 9028). I was born in 1954 and my personal recollections of the property, set out below, date back to the family using the 9028 property from 1983 when Zella Short bought it and gave the Barretts as well as me permission to use it.

    4. When Vanessa and I bought Lot 9028, we understood that we were buying lake-front property that extended from the middle of Lake Sammamish to the East Lake Sammamish Parkway and that the property had an easement on it for the railroad to use so long as there were trains to run. That was my belief, and, as far as I could understand based on my families' and neighbors' improvements of their own properties, including their gardening and other uses of the right of way, and the Barretts' use of their unimproved property to the North of us, which they used seasonally as a family retreat and cleaned and maintained year round, that was also the common belief of the other owners on Lake Sammamish both north and south of me. Among many other memories, I can remember my uncles sitting around our camp fires, talking about how when the railroad stopped running, all the land would belong to the family, the easement dissolving.

    5. Prior to my purchase of Lot 9028, Zella Short invited and allowed me and my other family members to use the right of way just as she did herself. At her invitation, me and my extended family (cousins, aunts and uncles, etc.) used Lot 9028 and the right of way for several years before Vanessa and I purchased the properties. The uses included activities over virtually the entire right of way such as hunting for arrowheads, frogs and other treasures (Diagram 1,

Area H), camp fires, camping, cooking (Diagram 1, Area I), fishing, hammock (Diagram 1, Area G), horse shoes (Diagram 1, Area I), parking (Diagram 1, Area D), picnic tables and picnics for up to 100 people (Diagram I, Area A), piñatas, plants, storage (Diagram 1, Area I), barbeques, frisbee, gardening, berry picking, reading, photography, hunting, rock collecting, board games, outdoor slide shows projected onto bed sheets (Diagram 1, Area A), fireworks, and birthday and holiday celebrations (Diagram 1, Area A). We all helped Gordon Jr. and Zella take care of the properties, doing planting, landscaping, mowing, general maintenance, and garbage pickup (Diagram I, Area E). We used virtually the full property, from East Lake Sammamish Parkway to the lake shoreline and beyond with the exception of a steep embankment between Diagram 1, Areas D and H, (which we later did use when constructing the driveway/access road, as shown Diagram 2 Area A). And we helped Zella prevent others from using the property, including trespassers, teens and others.

6. Additionally, we harvested timber and collected materials from the right of way to build sheds for storing tools and supplies. My Uncle Don Barrett Sr. was a logger and worked on many of the adjacent tracts up the hill and toward Issaquah. And, he moved logs to the lake and tied them up in rafts to the concrete anchor at the west of the dock (it still remains to this day), until the raft was floated to the mill. Our family used their logging expertise, to fell and mill timber on site to construct amenities used exclusively on the property such as tables, benches and sheds. (Diagram 1, Area A.) My family performed extensive gardening and landscaping throughout the properties, including pruning, installing perennial and annual vegetable gardens over decades; installing and maintaining landscaping and mowing of grassed areas for active use and to control blackberries; and planting deterrent plants such as holly and ivy to deter trespassers. (Diagram 1, Areas H and E). We hauled in boats and materials for storage and active private use of the property. (Diagram 1, Area B). The one I remember the most is a green wooden WWII troop landing skiff; it was about twenty feet long. All of these described uses transpired since the time in the years leading up to 1988 and continued (along with other uses) uninterrupted through and past 1998.

7. Zella Short passed in late 1986. Before she died, she used the property in conjunction with my Barrett-relatives and then they and I, used the property, including the right of way, exclusively for well over ten years prior to 1998, primarily for the uses described in the preceding paragraph. Zella also used the right of way for access across the Barrett property.

8. After Zella passed, I contacted Zella's daughter, Janet Levick, who was also Zella Short's executrix, and offered to buy Lot 9028 in 1987, which she indicated she would sell me after Zella's estate was probated (which concluded in 1989, at which time I purchased the property). She also agreed to let me begin preconstruction work on the property, while probate was pending, knowing I would purchase the property as soon as the probate concluded. During the period from 1987 to 1990, I actively used the property, performing extensive preconstruction work on Lot 9028, including soil testing, landscaping, design work, tree cutting, and site preparation. This work was performed on the entire Lot 9028, including the right of way. (Diagram 1, Areas A, D, E, H and I; Diagram 2, Areas A, B and C.)

9. In 1990, I applied for and obtained a permit to construct the home, and it was completed in 1991. (Diagram 2, Area B.) As part of construction on Lot 9028, and continuing through and after 1998, I performed extensive landscaping, installing utilities, irrigation, and generally did a significant amount of project work across the full property of Lot 9028, i.e. including the right of way area except for the train track itself (Diagram 2, Areas A, B and C) - though the railroad did remove some railroad ties so I could extend drainage and utilities. A railroad employee would stop in and authorize moving and replacing ties to install utilities/drainage under the tracks. I also extensively fenced the area around Lot 9028 (and Lot 9113). (Diagram 2, "X-X" areas in yellow.)

10. As to the use of the land burdened by the right of way over Zella's property (Lot 9028), I believed we were using the property with her permission because she owned it. If, however, some third party owned that property as the Government contends, to the best of my knowledge she never received permission from any third party to treat the property as if she owned it. That is my belief because, again, we all believed that the abutting owners owned the right of way

itself, all the way up to the Parkway, and Zella, and Janet, her daughter, never did or said anything that would have suggested otherwise.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge. This declaration was executed on this ___ day of February, 2018.

_____
David M. Collins



G:\ESM-JOBS\1993\001\017\gis\Fex_ESammamishROW-Collins.mxd
Collins AP Map 1:
1983-1988 (Early - Short)
A) Picnic Tables.
B) Boat storage.
C) Cooking station.
D) Parking spaces.
E) Mowed/maintained landscaping.
F) Access Agreement 8805040489.
G) Hammock.
H) Listed other uses.
I) Horse shoes, piñatas, etc.
EAST LAKE SAMMAMISH PKWY NE
E Lk Sammamish Trail
9113
TRCT
9028
80
60
50
40
0 20 40
1 inch = 40 feet
N
ESM CONSULTING ENGINEERS, LLC
Ackerson, Kauffman, Fex, PC
E Lake Sammamish ROW
Date: 2/1/2018; Created by: SavannaN. Data Source:
GIS data provided by King County and the City of Sammamish (2017).
Exhibit features are conceptually designed and no exact location shall be assumed. Careful techniques are used in displaying GIS data, yet ESM cannot guarantee accuracy of information conveyed on this map.



G:\ESM-JOBS\1993\001\017\gis\Fex_ESammamishROW-Collins.mxd
Collins AP Map 2:
A) 1989-1990: Improved access (maintained landscaping).
B) 1989-1991: Constructed lot -9028 (2841 E Lk Samm Pkwy NE).
C) Continuously used, landscaped and maintained from prior to 1983.
X-X) 1990: Installed fences.
C
9113
A
TRCT
B
9028
ESM CONSULTING ENGINEERS, LLC
0 20 40
1 inch = 40 feet
N
Ackerson, Kauffman, Fex, PC
2012 Aerial Imagery
Date: 1/25/2018; Created by: SavannaN. Data Source:
GIS data provided by King County (2017); Aerial Imagery provided by Aerial Express (2012). Exhibit features are conceptually designed and no exact location shall be assumed. Careful techniques are used in displaying GIS data, yet ESM cannot guarantee accuracy of information conveyed on this map.

Ex. 14A-2



Ex. 14A-3



Ex. 14A-4